SHARON YOUNG, Plaintiff-Appellee and Cross-Appellant, v. FIKRY MA-
KAR, Defendant-Appellant and Cross-Appellee.

Second District No. 2—90—0337

Opinion filed January 14, 1991.

338

Robert R. McWilliams, of Kostantacos, Traum, Reuterfors & McWilliams, P.C., of Rockford (Lawrence R. Kream, of counsel), for appellant.

Peter S. Switzer and Robert C. Pottinger, both of Barrick, Switzer, Long, Balsley & Van Evera, of Rockford (Thomas G. Ruud, of counsel), for appellee.

Shaun McParland Baldwin, of Tressler, Soderstrom, Maloney & Priess, of Wheaton, for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE DUNN delivered the opinion of the court:

Defendant's attorney, Robert McWilliams, appeals from a trial court's order holding him in contempt for informing the court he would not comply with its pretrial order prohibiting a private interview between him and the plaintiff's treating physicians. At issue in this case is whether the prohibition against *ex parte* contact continues even after the physicians have been deposed and whether a defense attorney can be held in contempt for refusing to comply with that prohibition. We affirm the trial court's order holding defense attorney McWilliams in contempt and prohibiting him from conducting a private interview with the plaintiff's treating physicians.

Plaintiff, Sharon Young, brought suit against the defendant, Fikry Makar, M.D., to recover damages for injuries sustained when Dr. Makar performed a hysterectomy upon her. During pretrial discovery, depositions were taken from two of the plaintiff's subsequent treating physicians, Drs. Dennis Corcoran and William Gorski. After the doctors were deposed, defendant's attorney, Robert McWilliams, moved for leave to conduct a private interview with these physicians to review their testimony and prepare them for testifying at trial or, in the alternative, to bar plaintiff's attorney from interviewing these physicians prior to trial.

The trial court denied the motion. Defendant's attorney then informed the court that he would not comply with the court's order. The court found him in contempt and imposed a fine of $100. In addition, the court ruled that defendant would be barred from introducing the testimony of these physicians at trial if he in fact interviewed them, but that the fine would be remitted to McWilliams if he did not interview them. Defendant timely appeals. The Illinois Association of Defense Trial Counsel has submitted a brief as *amicus curiae*, pursuant to Supreme Court Rule 345 (107 Ill. 2d R. 345).

Plaintiff filed a section 2—611 motion for sanctions on the basis that the defendant's motion to conduct an *ex parte* interview with the plaintiff's treating physicians was not in good faith or supported by existing law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) The trial court denied this motion. Plaintiff filed a cross-appeal.

Before addressing the issue of whether Illinois law prohibits *ex parte* communication between the defense and the plaintiff's treating physicians after the physicians have been deposed and for the purpose of preparing them for trial, we must address a preliminary jurisdictional issue raised by the plaintiff. Plaintiff contends on appeal that this court does not have jurisdiction to consider the validity or correctness of the pretrial order itself but only the correctness of the or-

der of contempt entered against defendant's counsel for his "inappropriate conduct" in court. The plaintiff argues that the pretrial order was never actually violated by McWilliams; therefore, no actual controversy concerning the order exists. The plaintiff contends that under these circumstances the issue of the correctness of the pretrial order is interlocutory until and unless it is actually violated. We disagree.

A contempt order is collateral to and independent of the case in which it arises. As such, a contempt order is final and appealable despite appearing to be interlocutory. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 172.) In contrast, a pretrial discovery order is an interlocutory order. In *People ex rel. Scott v. Silverstein*, our supreme court stated:

> "Where an unappealable interlocutory order results in a judgment of contempt including fine or imprisonment, such a judgment is a final and appealable judgment and presents to the court for review the propriety of the order of the court claimed to have been violated." (*Silverstein*, 87 Ill. 2d at 174.)

Once defense attorney McWilliams refused to obey the order and a final contempt order imposing sanctions was entered against him, the contempt order became final and appealable, as well as that part of the underlying pretrial discovery order upon which it was based.

Plaintiff argues that McWilliams' statement that he would not comply with the court's order did not create an actual controversy because McWilliams never intended to actually violate the order, only to manufacture an appeal by stating that he would violate the order. However, our supreme court has stated that exposing one's self to contempt proceedings has long been recognized as an appropriate method of testing the validity of a court order. (*People v. Shukovsky* (1988), 128 Ill. 2d 210, 219.) In fact, this method was also used to test the appropriateness of the trial court's order in *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, *appeal denied* (1987), 113 Ill. 2d 584. Accordingly, the issue concerning the validity of that part of the pretrial discovery order barring *ex parte* contact between the defense and the plaintiff's treating physicians outside of formal discovery is properly before this court. We now turn to that issue.

The defendant contends that the trial court erred in prohibiting defense counsel from conducting *ex parte* interviews with plaintiff's treating physicians after the physicians had been deposed. Specifically, the defendant argues that the trial court erred in extending the *Petrillo* doctrine to cover the circumstances surrounding this case.

In its *amicus* brief, the Illinois Association of Defense Trial Coun-

sel requests that this court overrule *Petrillo* and its progeny. Plaintiff argues that this argument is waived because it was not raised in the trial court. In any event, we are not inclined to reconsider *Petrillo* or any of the subsequent cases following the *Petrillo* doctrine.

■ *Petrillo* was the first Illinois case dealing squarely with the issue of whether an interview between defense counsel and a plaintiff's treating physician, without the plaintiff's knowledge, violates the physician-patient privilege. The court held that such *ex parte* conferences are prohibited because modern public policy strongly favors the confidential and fiduciary relationship existing between a patient and his or her physician. *Petrillo*, 148 Ill. App. 3d at 587.

The court explained that society possesses an established and beneficial interest in the sanctity of the physician-patient relationship, which is reflected in both the medical profession's own code of ethics and the fiduciary relationship existing between a patient and his or her physician, long recognized by both Illinois and United States courts. (148 Ill. App. 3d at 588.) Because of the threat posed to the sanctity of this relationship, the court held that extrajudicial, *ex parte* discussions of a patient's medical confidences are prohibited. 148 Ill. App. 3d at 588.

The court did recognize that the patient does implicitly consent to a physician's releasing medical information related to the condition he or she has placed in issue when that patient files a lawsuit, but that this consent is necessarily limited to the release of relevant information pursuant to court-authorized discovery. (148 Ill. App. 3d at 591.) The court concluded that discussions between defense counsel and the plaintiff's treating physicians should be made pursuant to court-authorized rules of discovery only. 148 Ill. App. 3d at 610.

This court adopted the *Petrillo* holding in *Karsten v. McCray* (1987), 157 Ill. App. 3d 1. In keeping with the goals sought by the *Petrillo* court, we held that *ex parte* interviews with the plaintiff's treating physicians are prohibited and that barring the testimony of a plaintiff's treating physician is an appropriate sanction to protect the patient's confidences and to preclude such interviews from taking place. (157 Ill. App. 3d at 14.) We expressed the same concerns raised in *Petrillo*. The risk of potential harm to the physician-patient relationship exists in an *ex parte* situation because the physician may disclose patient confidences which are irrelevant and unrelated to the condition placed at issue in the lawsuit. (157 Ill. App. 3d at 14.) We concluded that the use of formal discovery puts a plaintiff in a position to protect his or her physician-patient relationship by objecting to irrelevant inquiries *before* the privilege is compromised. 157 Ill. App. 3d at 14.

■ Defendant contends that the policy considerations supporting the ban on *ex parte* interviews with treating physicians do not apply once the information conveyed by the patient to the physician has been properly revealed through discovery. We do not agree. The risk of potential harm to the physician-patient relationship created by *ex parte* contact between defense counsel and plaintiff's treating physicians, present in both *Petrillo* and *Karsten,* survives even after formal discovery. As such, *ex parte* communications between defense counsel and plaintiff's treating physicians are prohibited both before formal discovery and after.

■■ ■ Defendant argues that, after formal discovery, the information disclosed is no longer confidential and therefore no reason exists to prohibit *ex parte* interviews after discovery has taken place. This argument assumes there is nothing left of the privilege to protect after discovery has occurred. This is simply untrue.

When the plaintiff filed her lawsuit, she implicitly consented to her physician releasing any medical information related to the condition she placed at issue in the lawsuit. (*Petrillo,* 148 Ill. App. 3d at 591.) However, the law in Illinois is clear. This consent is limited to only the release of medical information relevant to the lawsuit, pursuant to the methods of discovery authorized by Supreme Court Rule 201(a) (107 Ill. 2d R. 201(a)). The *Petrillo* court was clear when it stated:

"A patient certainly does not, by simply filing suit, consent to his physician discussing that patient's medical confidences with third parties *outside court-authorized discovery methods,* nor does he consent to his physician discussing patient's confidences in an *ex parte* conference with the patient's legal adversary." (Emphasis added.) (*Petrillo,* 148 Ill. App. 3d at 591.)

The fact that plaintiff consents to the release of relevant information through court-authorized discovery methods does not extinguish what remains of the physician-patient privilege as defendant would have us believe.

■ Defendant argues that our decision in *Karsten v. McCray* (157 Ill. App. 3d 1) limits the *Petrillo* doctrine by permitting *ex parte* contacts with treating physicians where no confidential information is revealed. To the contrary, our decision in *Karsten* emphasized the need to rely on formal discovery to insure the physician-patient privilege is protected *before* it is compromised. We stated:

"Discussion of the patient's confidences under circumstances other than through formal discovery is potentially harmful to the interests of the patient in that the physician might disclose intimate facts regarding the patient which are unrelated and irrele-

vant to the mental or physical condition placed at issue in the lawsuit. [Citation.] A plaintiff should be allowed to protect his physician-patient privilege *before* it is compromised. Requiring utilization of formal discovery procedures places the plaintiff in a position to object to irrelevant inquiries. Court supervision would protect the interests of both parties." (Emphasis in original.) (157 Ill. App. 3d at 14.)

Nothing from our opinion in *Karsten* should be construed as limiting the *Petrillo* doctrine.

 It is true that the information disclosed through discovery is no longer confidential and that the physician-patient privilege is waived to that extent, but the threat to what remains of the confidential and fiduciary relationship between the patient and her physician is still present. It would be quite difficult for the defense to discern to what extent the privilege is waived and to stick strictly to those areas without creating a risk to what remains of the privilege. Permitting *ex parte* interviews between defense counsel and the treating physicians would subject the physicians to improper pressures to disclose information without the presence of the plaintiff to insure protection of the privilege.

 Defendant argues that society's interest in ascertaining the truth outweighs society's interest in protecting the physician-patient privilege. We disagree. This same argument was addressed in *Petrillo*. Again, the law is clear. The *Petrillo* court emphasized the strong public policy favoring protection of the "sanctity of the physician-patient relationship." (*Petrillo*, 148 Ill. App. 3d at 588.) Contrary to what the defendant argues, the ban on *ex parte* conferences does not impair society's interest in ascertaining the truth because it does not prevent the truth from being discovered. "[I]t merely regulates the discovery process so as to protect the confidential relationship existing between a patient and his treating physician." *Petrillo*, 148 Ill. App. 3d at 606.

Defendant argues that, by denying the defendant access to the plaintiff's treating physician in order to prepare his testimony, the rule impedes the truth from being discovered at trial. The defendant claims that without the opportunity to go over the physician's testimony before trial, the presentation of the physician's testimony would be adversely impacted which, in turn, increases the chances that the truth will not be ascertained at trial. We believe the defendant greatly overstates the risk that the truth will not be ascertained. The physician is required to testify truthfully at trial, and the defense is entitled to cross-examination. With these safeguards intact, the risk that the truth will not be ascertained is very small and does not outweigh society's interest in protect-

ing the sanctity of the physician-patient relationship.

■■ In sum, we reaffirm the holdings in *Petrillo* and *Karsten*. *Ex parte* communications between defense counsel and the plaintiff's treating physicians pose an impermissible threat to the sanctity of the physician-patient relationship. That threat survives even after formal discovery has taken place. As such, to avoid undermining this relationship, such *ex parte* communications are prohibited.

Accordingly, for the reasons set forth above, we rule that discussions between defense counsel and a plaintiff's treating physician should be pursuant to the rules of·discovery only. The decision of the circuit court of Winnebago County is affirmed.

■■■ We now turn to the plaintiff's cross-appeal. This court only has jurisdiction to review final orders unless the order falls within one of the exceptions for interlocutory orders set forth in the supreme court rules, none of which applies here. (*Renzulli v. Zoning Board of Appeals* (1988), 176 Ill. App. 3d 661, 662.) Pursuant to section 2—611 of the Code, plaintiff's cross-appeal must be dismissed. Section 2—611 states in part as follows:

> "All proceedings under this Section shall be within, and part of the civil action in which the pleading, motion or other paper referred to herein has been filed, and no violation or alleged violation of this Section shall give rise to a separate cause of action, or another cause of action within the civil action in question, by, on behalf of or against any party to the civil action in question, and by, on behalf of or against any attorney or insurance company involved in the civil action in question." Ill. Rev. Stat. 1987, ch. 110, par. 2—611.

Clearly, section 2—611 claims must be considered a part of the civil action which gave rise to the claim, not a separate action. (*In re Marriage of Strauss* (1989), 183 Ill. App. 3d 424, 430.) Plaintiff's claim for sanctions against McWilliams arises from the civil action for malpractice which has not yet been resolved. Until that action is resolved, we cannot consider whether the trial court's order dismissing plaintiff's motion for section 2—611 sanctions was proper. Accordingly, the plaintiff's cross-appeal is dismissed.

Affirmed in part; dismissed in part.

UNVERZAGT and WOODWARD, JJ., concur.