JUDITH TESTIN *et al.*, Plaintiffs-Appellees, v. DREYER MEDICAL CLINIC, Defendant-Appellant (Copley Memorial Hospital *et al.*, Defendants).

Second District   No. 2—92—0352

Opinion filed December 18, 1992.

884

Mary A. Strunk, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (William F. Cunningham, of counsel), for appellant.

Thompson, Lamont & Flaherty, P.C., of Aurora (John M. Lamont, of counsel), for appellees.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Defendant, Dreyer Medical Clinic (Dreyer), appeals after the trial court ordered that its attorney be prohibited from engaging in *ex parte* communication with Dr. Paul Herwick, the treating physician for plaintiff, Judith Testin. Dr. Herwick is an employee, shareholder and director of Dreyer. The trial court also ordered that defense counsel, William Cunningham, pay a $100 fine for contempt of court for announcing that he intended to violate the court's order. The issues on appeal are: (1) whether Testin waived the physician/patient privilege by either filing suit or allowing *ex parte* communication with other physicians at Dreyer; (2) whether prohibiting Dreyer's attorney from speaking *ex parte* with Herwick violates the due process clause of the State and Federal Constitutions; (3) whether Illinois law permits *ex parte* communication between a medical corporation and its employee/shareholder who treated plaintiff; (4) whether defense counsel can be held in contempt for refusing to comply with an order prohibiting *ex parte* communication between his client and an employee/shareholder of the client; (5) whether the court's order violates the constitutional rights of freedom of speech and association in the State and Federal Constitutions; and (6) whether *Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, which held that *ex parte* communication between defense counsel and plaintiff's treating physician is prohibited, should continue to be followed. We affirm.

Richard and Judith Testin filed a six-count complaint against Dreyer, Copley Memorial Hospital and David Lando on May 3, 1991, of which count I is relevant to this appeal. The Testins alleged that gynecological surgery was performed on Judith on July 2, 1989, by Dr. Scott Donovan, an employee at Dreyer. They also alleged that Dreyer, through its employees, failed properly to diagnose and treat a post-operative bowel complication resulting in a bowel rupture. The complaint was subsequently amended to add Dr. Ann West, an employee of Dreyer, as an additional defendant.

Dreyer made a motion to communicate *ex parte* with Dr. Paul Herwick, an employee, shareholder and director of Dreyer. Dr.

Herwick was consulted by Dreyer's obstetricians after Judith's gynecological surgery about her bowel problem. He then performed the procedure that determined Judith had a ruptured bowel. Dreyer claimed that it was necessary to meet with Dr. Herwick *ex parte* in order to review the litigation and the treatment he rendered to Judith. Dreyer also claimed that Judith waived the physician-patient privilege by allowing Dreyer's attorney to speak *ex parte* with other physicians in Dreyer's obstetrics unit and by filing a lawsuit against Dreyer.

On December 10, 1991, after a hearing on Dreyer's motion, the court ordered that pursuant to *Petrillo* Dreyer's counsel would be prohibited from *ex parte* conferences with Dr. Herwick regarding medical care and treatment provided to Judith Testin.

Dreyer filed a motion to reconsider in which Dreyer's counsel alternatively requested that the trial court issue a contempt citation against him because he expressly intended to violate the court's December 10, 1991, order. On February 20, 1991, the trial court denied Dreyer's motion to reconsider. The court also found that Dreyer's counsel was in contempt of court and ordered that he pay a $100 fine. Dreyer thereafter filed a timely appeal.

■ We first address whether this court has jurisdiction to hear this appeal. Our supreme court has held that a judgment of contempt imposing a fine included in an unappealable interlocutory order is final and appealable. (*People v. Verdone* (1985), 107 Ill. 2d 25, 30, citing *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 174.) The court of review may also address the order of the trial court claimed to have been violated. (*Verdone*, 107 Ill. 2d at 30.) Thus, we have jurisdiction to address Dreyer's contentions.

### WAIVER OF PRIVILEGE

At issue is whether plaintiffs have waived the physician-patient privilege by either filing the lawsuit or allowing Dreyer's counsel to speak *ex parte* with other physicians employed at Dreyer. Dreyer contends that the physician-patient privilege can be waived and waiver is not against public policy. Dreyer also cites section 8—802 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 8—802) to support its argument that the situation at bar is an exception to the physician-patient privilege. Finally, Dreyer cites *Greene v. Rogers* (1986), 147 Ill. App. 3d 1009, as support that filing a lawsuit waives the privilege.

Plaintiffs contend that they have not waived the privilege by allowing Dreyer's counsel to speak *ex parte* with other Dreyer physi-

cians. Plaintiffs claim they were following the rule in *Ritter v. Rush-Presbyterian-St.Luke's Medical Center* (1988), 177 Ill. App. 3d 313, that the privilege is waived as to those physicians for whom the medical corporation may be held vicariously liable. Plaintiffs also claim the exceptions to the physician-patient privilege in section 8—802 of the Code are inapplicable here. Finally, plaintiffs argue that *Greene* is distinguishable.

■ We agree with plaintiffs that they did not waive the privilege when they allowed Dreyer's counsel to speak *ex parte* with other physicians in Dreyer's obstetrics unit. We note that Dreyer provided no case law that specifically addressed this issue. Although the *Ritter* case is not factually "on all fours" with our case, it provides insight into the issue. There, a radiology technician lowered the rails on a gurney on which the plaintiff was lying. The plaintiff fell off the gurney, fractured a facial bone, and was diagnosed with a subdural hematoma. (*Ritter*, 177 Ill. App. 3d at 315-16.) The hospital's risk manager interviewed four physicians who treated the plaintiff after her fall. The plaintiff then moved to bar further *ex parte* communication among the hospital, her treating physicians and other hospital employees, which was granted by the trial court. On appeal, the defendant hospital contended that *Petrillo* was inapplicable because the treating physicians were also defendant's staff physicians. 177 Ill. App. 3d at 316.

The *Ritter* court upheld the applicability of *Petrillo*, stating that the situation would be different if the hospital was being held vicariously liable for the negligence of an employee-physician. In that situation, the physician-patient privilege would effectively prevent the hospital from defending itself. 177 Ill. App. 3d at 317.

The *Ritter* case is factually distinguishable because the allegedly negligent employee was a nonphysician instead of a physician. However, in both our case and the *Ritter* case, the defendant-employer sought to speak with the plaintiff's treating physician, who also happened to be employed by the defendant. As such, the *Ritter* case is analogous. Although the waiver rule that plaintiffs claim exists in *Ritter* is not evident, we find that the spirit of that rule is implied. The court implies that the physician-patient privilege does not apply when the medical entity wishes to communicate with the allegedly negligent physician through whom it may be vicariously liable; otherwise, the privilege applies. *Ritter*, 177 Ill. App. 3d at 317-18.

Here, Dr. Herwick was not the allegedly negligent physician. Thus, the privilege would apply because Dreyer is not effectively prevented from defending itself in the lawsuit. Plaintiffs sued because of

negligent treatment allegedly administered by Dreyer's gynecological/ obstetrics personnel. Plaintiffs did not waive their privilege as to treatment given by Dr. Herwick, a subsequent treating physician, when they allowed Dreyer to communicate with physicians in the obstetrics unit. In a sense, the obstetrics unit was the specific defendant sued when Dreyer was sued because the care given by physicians in that department is the care in question. The fact that the subsequent treating physician the obstetricians consulted concerning Judith's bowel problem happened to be affiliated with the same clinic should not render the physician-client privilege waived.

■ Further, we disagree with Dreyer's argument that plaintiffs waived the privilege when they filed their lawsuit. Section 8—802 of the Code (Ill. Rev. Stat. 1991, ch. 110, par. 8—802) does not necessitate a different result. The exceptions to section 8—802 in question are subsections (2) and (4):

> "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only *** (2) in actions, civil or criminal, against the physician for malpractice, *** (4) in all actions brought by or against the patient *** wherein the patient's physical or mental condition is an issue ***." Ill. Rev. Stat. 1991, ch. 110, par. 8—802.

We have already distinguished this case from one where the treating physician is the allegedly negligent party, thereby rendering subsection (2) inapplicable. The *Petrillo* case discussed subsection (4):

> "[W]e note that when a patient files suit, he implicitly consents to his physician releasing any of the medical information related to the mental or physical condition which the patient has placed at issue in the lawsuit ***.

> The patient's implicit consent, however, is obviously and necessarily limited; he consents only to the release of his medical information (relative to the lawsuit) *pursuant to the methods of discovery authorized by Supreme Court Rule 201(a)* (87 Ill. 2d R. 201(a))." (Emphasis in original.) (*Petrillo*, 148 Ill. App. 3d at 591.)

Thus, subsection (4) does not allow for *ex parte* communication between plaintiff's treating physician and defense counsel. Although the physician-patient privilege will eventually be broken, it will only occur pursuant to formal discovery methods.

Dreyer's reliance on *Greene* (147 Ill. App. 3d 1009) and *Mondelli v. Checker Taxi Co.* (1990), 197 Ill. App. 3d 258, to support its waiver

argument is misplaced. In *Greene*, the plaintiff's treating physician was allowed to testify for the defense as the plaintiff had filed an action in which his wife's physical condition was at issue. (*Greene*, 147 Ill. App. 3d at 1018.) However, this was not a situation where formal discovery methods were ignored or where *ex parte* communication occurred between the defense and the treating physician, which is the issue before this court.

In *Mondelli*, a professional associate of the treating physician had the status of treating physician imputed to him. (*Mondelli*, 197 Ill. App. 3d at 263.) The court specifically noted that both doctors specialized in neurosurgery, practiced in the same suite, and shared the same telephone number. (197 Ill. App. 3d at 263.) We agree with the court in *Mondelli* that the fact that both doctors were neurosurgeons was significant. As previously discussed, the physician-patient privilege was not waived here when plaintiff allowed the defense to speak *ex parte* with other doctors in the obstetrics unit as that was the particular unit alleged to have been negligent. Dr. Herwick was not in that unit, so we believe the privilege as to him had not been waived.

DUE PROCESS

Dreyer's second contention is that its due process rights are violated when it is not allowed to speak *ex parte* with its employee, shareholder and director, Dr. Herwick. Dreyer argues that the ability to defend itself is a fundamental right, enjoying constitutional protection under the fifth and fourteenth amendments to the United States Constitution. Dreyer claims that this right is violated if it is prohibited from speaking *ex parte* with Dr. Herwick, who Dreyer argues is a key witness in the case. Plaintiffs counter that due process rights are not being skirted here because disallowing *ex parte* communication does not prevent contact with Dr. Herwick via formal discovery methods.

"The due process clauses of the Federal and State Constitutions protect against the deprivation of liberty or property without due process of law." (*Tiller v. Klincar* (1990), 138 Ill. 2d 1, 13-14; U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2.) "[P]rocedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake." (*Tiller*, 138 Ill. 2d at 14.) The basic requirements of procedural due process are notice and an opportunity to be heard and adequately defend one's interests. *Kaltsas v. City of North Chicago* (1987), 160 Ill. App. 3d 302, 308.

■ We disagree with Dreyer's assertion that its due process rights are being violated. Dreyer fails, in its brief, to elaborate on what information that could be obtained in an *ex parte* discussion with Dr. Herwick could not be obtained via discovery pursuant to Supreme Court Rule 201(a) (134 Ill. 2d R. 201(a)). Dreyer has been allowed to speak *ex parte* with the physicians in the obstetrics unit. Since the alleged negligence occurred during gynecological treatment, we believe that Dreyer is not hindered in preparing an adequate defense to the lawsuit. Its counsel is able to consult with the physicians specializing in gynecological/obstetrics medicine outside the framework of formal discovery. We fail to see the "difficulty," "outright prejudice," and "violation of the work product doctrine" Dreyer claims exists in preventing *ex parte* communication with Dr. Herwick.

■ Dreyer also cites Illinois Pattern Jury Instructions, Civil, No. 2.06 (3d ed. 1989) (hereinafter IPI Civil 3d No. 2.06), which states that an attorney has the right to interview a witness to determine what testimony he or she will give at trial. Dreyer argues that based on this instruction Dr. Herwick should be allowed to speak *ex parte* with Dreyer's counsel so that he will make no statements constituting admissions on the part of Dreyer. However, Dr. Herwick's right to counsel is not the issue here. If he is concerned that his statements may constitute admissions, nothing prevents him from seeking legal counsel to advise him of that potential danger. This fact does not require that we allow Dreyer to speak *ex parte* with Dr. Herwick. Also, as will be discussed later, Dr. Herwick's opinions may not constitute admissions binding upon Dreyer.

Further, the *Petrillo* court discounted the applicability of IPI Civil 3d No. 2.06 to defense counsel's attempt to engage in *ex parte* communication with plaintiff's treating physician. The court stated:

> "We *** believe that [IPI Civil 3d No. 2.06] was promulgated for the single purpose of insuring that juries do not discount a witness' testimony merely because that witness had previously talked to an attorney for one of the litigants." (*Petrillo*, 148 Ill. App. 3d at 602.)

We agree that IPI Civil 3d No. 2.06 does not implicitly allow *ex parte* communication in this situation.

## CONTEMPT

■ At issue is whether defense counsel representing a corporation may be held in contempt for refusing to comply with the

court's order prohibiting *ex parte* communication. Although Dreyer states this contention in the "issues presented" section of its brief, the "argument" section of the brief has no discussion relating particularly to this issue. Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) requires that the appellant present contentions with citation to authorities or references to the record; points not argued are waived. Thus, Dreyer has waived this issue.

We note that if we find the *Petrillo* doctrine applicable to this case, the court's order will be affirmed, including that portion finding Dreyer's counsel in contempt of court. Likewise, if *Petrillo* is inapplicable, the order will be vacated and the contempt order will fall as well. So, in reality, Dreyer's contention will be indirectly addressed when the main issue is decided.

### APPLICABILITY OF *PETRILLO*

Dreyer's next contention is that *Petrillo* is inapplicable to our situation. Dreyer argues that *Petrillo* is distinguishable because Dr. Herwick was Judith's treating physician *and* is an employee, shareholder and director of Dreyer. Dreyer claims that *Petrillo* is applicable only when the treating physician has no connection with the defendant. Further, Dreyer argues that the policy behind *Petrillo* has no relevance in the situation at hand as Dreyer, through Dr. Herwick, is already privy to Judith's privileged information.

Plaintiffs contend that *Petrillo* firmly establishes that defense counsel is prohibited from *ex parte* communication with a plaintiff's treating physician. They also claim, citing *Ritter* (177 Ill. App. 3d 313), that *Petrillo* applies even if the treating physician is an employee of the defendant medical corporation. Plaintiffs argue that *Ritter* is clear that agency or corporate principles do not negate the physician-patient privilege.

Although the factual situation in *Petrillo* is distinguishable from that in this cause, we believe that the reasoning behind *Petrillo* is equally as applicable here. The Appellate Court, First District, noted that public policy favors the existence of a confidential and fiduciary relationship between the physician and the patient. (*Petrillo*, 148 Ill. App. 3d at 587.) This policy is reflected by the code of ethics adopted by the medical profession and the fiduciary relationship between physicians and patients recognized by Illinois courts. (148 Ill. App. 3d at 588.) An *ex parte* conference concerning the confidences of the patient destroys the sanctity of the physician-patient relationship. (148 Ill. App. 3d at 591.) "[W]hen a patient files suit, he consents only to the release of certain informa-

tion; he does not automatically consent to the termination of the confidential relationship existing between him and his physician." 148 Ill. App. 3d at 591.

■ Dreyer's fear that plaintiffs will learn its trial strategy and work product was also addressed in *Petrillo*. The court stated that at the treating physician's deposition, plaintiff's attorney merely "monitors" the questions and answers. (148 Ill. App. 3d at 598.) The court also stated:

"[T]he purpose of a deposition *** is to allow the interested parties *** to learn or 'discover' the opinion of that physician. That opinion *** is the same regardless of whether it is disclosed through a deposition or through an *ex parte* conference." 148 Ill. App. 3d at 598.

The added twist in our cause is the fear that Dr. Herwick's opinions will be taken as admissions on the part of Dreyer. However, this is not particularly relevant in deciding whether to allow *ex parte* communication between Dr. Herwick and Dreyer. Theoretically, Dr. Herwick's opinions should remain consistent whether he consults with Dreyer's counsel before a deposition. As we previously stated, Dr. Herwick may wish to retain an attorney to protect his interests at the deposition.

Further, there is case law to suggest that Dr. Herwick's opinions given in a deposition may not be admissions binding upon Dreyer. Statements made by an officer of a corporation may be admissions binding upon the corporation if made in the exercise of the officer's duties. (*Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 181.) There is a question whether being deposed as a treating physician would be exercising a duty as an officer of the medical corporation. However, that issue is beyond the scope of this appeal.

■ Dreyer also argues that one-person medical corporations will be significantly affected if we hold that treating physicians who are employed by defendant-medical corporations may not speak with them *ex parte* concerning the confidences of the plaintiff-patient. However, we find this situation clearly distinguishable. First, if a one-person medical corporation were being sued for negligence, that particular doctor's negligence would be the subject of the litigation. Second, it is highly unlikely that a plaintiff in that situation would sue only the corporation and not the doctor when the doctor would also be personally liable. Under section 8 of the Professional Service Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 415–8), any officer, shareholder, agent or employee of a corporation orga-

nized under the Professional Service Corporation Act remains personally liable for negligent acts committed by them. (See also *Fure v. Sherman Hospital* (1977), 55 Ill. App. 3d 572, 574 (Medical Corporation Act (Ill. Rev. Stat. 1991, ch. 32, par. 644) also imposes personal liability on a physician "furnishing medical service").) Even if the plaintiff did not sue the doctor individually, the fact that the doctor may be held personally liable would place him in the status of a defendant such that the physician-patient privilege would not apply.

We further note that Dr. Herwick is not in the same position as that of the physician in Dreyer's hypothetical situation. Dr. Herwick was neither responsible for nor participated in the alleged negligent treatment that Judith Testin received. Under the present lawsuit, Dr. Herwick is not in danger of being held personally liable. His only fear of repercussion is that his shares or ownership in Dreyer may be affected. However, this fact would not place him in the situation where the physician-patient privilege would be waived.

■ The *Ritter* court found that principles of agency do not abrogate the physician-patient privilege. (*Ritter*, 177 Ill. App. 3d at 317.) We believe that this statement is applicable to medical corporations as well. In fact, section 14 of the Medical Corporation Act states:

> "This Act does not alter *any* law applicable to the relationship between a physician furnishing medical service and a person receiving such service ***." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 32, par. 644.)

Plaintiffs argue that physicians should not be allowed to choose a corporate form of medical practice as a means to violate a patient's confidences. We agree. The Medical Corporation Act and the Professional Service Corporation Act were adopted to give professionals the economic advantages of incorporation, but were not meant to alter the existing statutory or common law. As such, we find that practicing under a corporate form does not affect the physician-patient privilege, and therefore, *ex parte* communication between the plaintiffs' treating physician and its defendant-employer, a medical corporation, is prohibited pursuant to *Petrillo*.

### FREEDOM OF SPEECH AND ASSOCIATION

At issue is whether the *Petrillo* doctrine violates the constitutional rights of freedom of speech and association. Dreyer claims that *Petrillo* results in a prior restraint on speech, which has a "heavy presumption of constitutional invalidity." Dreyer also argues

that prior restraint is valid only if the activity restrained constitutes a serious or imminent threat to a protected competing interest. Dreyer claims that the right to free speech is violated between Dreyer and its attorney, and between Dr. Herwick and Dreyer's attorney.

Plaintiffs claim that this argument was raised and rejected in *Petrillo*. Plaintiffs argue that, pursuant to *Petrillo*, the compelling interests that prohibit *ex parte* communication in this situation are the patient's right to privacy and the confidential and fiduciary nature of the patient-physician relationship. Plaintiffs also cite *Baylaender v. Method* (1992), 230 Ill. App. 3d 610, an Appellate Court, First District, case in which the treating physician's attorney was the same as the corporation-defendant's attorney.

■■ We agree with plaintiffs that the rights of freedom of speech and association are not unconstitutionally restrained here, and we follow the rationale of *Petrillo*. The *Petrillo* court found that the restriction barring *ex parte* communication between treating physicians and defendants served two compelling State interests: the patient's right to privacy and the confidential and fiduciary relationship between patient and physician. (*Petrillo*, 148 Ill. App. 3d at 607.) We concur with the *Petrillo* court's balancing of interests and find that these same interests exist in our differing factual situation. A financial tie between the treating physician and the corporate defendant does not counterbalance the fundamental interests patients enjoy in the patient-physician relationship.

Further, if Dr. Herwick wishes to be represented by Dreyer's attorney, as Dreyer suggests when stating that Dr. Herwick's freedom of speech between him and his attorney is inhibited, we believe the *Baylaender* case is instructive. In *Baylaender*, the court noted that it would be impossible for plaintiff's treating physician to exercise his attorney-client privilege to prevent his attorney from disclosing the patient's confidences if the same attorney represented the treating physician *and* the defendant. (*Baylaender*, 230 Ill. App. 3d at 624.) The same scenario would occur if Dreyer's attorney also represented Dr. Herwick. This situation prevents building a "Chinese wall" between attorneys to prevent information sharing. (*Baylaender*, 230 Ill. App. 3d at 624-25.) However, this problem can be prevented here. Dreyer's attorney may not represent Dr. Herwick because of the competing interests between the plaintiffs' treating physician and counsel's client, Dreyer. Dr. Herwick, if he wishes to be represented by counsel, must seek someone other than Dreyer's attorney. With independent counsel, there is no fear that Dr.

Herwick's freedom of speech will be inhibited between him and his attorney.

### RECONSIDERATION OF *PETRILLO*

■■■ Dreyer's final contention is that *Petrillo* should be reexamined to determine its continued viability. Dreyer claims that there are alternatives to prohibiting *ex parte* communication between treating physicians and defendants that will also protect patient's confidences. Plaintiffs' counsel may seek a Supreme Court Rule 201(k) conference (134 Ill. 2d R. 201(k)) to resolve differences. Alternatively, plaintiffs' attorney may seek an *in camera* hearing or seek protection through a motion *in limine*. Finally, Dreyer cites case law from other jurisdictions that it claims is contrary to *Petrillo*.

We will not review the plethora of out-of-State case law provided by both Dreyer and plaintiffs. This court adopted the reasoning and holding of *Petrillo* in *Karsten v. McCray* (1987), 157 Ill. App. 3d 1, 14. We were recently asked to reconsider *Petrillo*, and we reaffirmed the holdings in *Petrillo* and *Karsten*. (See *Young v. Makar* (1991), 207 Ill. App. 3d 337, 345.) Again, we reaffirm *Petrillo* and quote from *Young*:

> "*Ex parte* communications between defense counsel and the plaintiff's treating physicians pose an impermissible threat to the sanctity of the physician-patient relationship. That threat survives even after formal discovery has taken place. As such, to avoid undermining this relationship, such *ex parte* communications are prohibited." (*Young*, 207 Ill. App. 3d at 345.)

Although the facts of this case are uniquely different from *Petrillo* and its progeny, the confidences known by Dr. Herwick are no different from those of other treating physicians. The trial court only prohibits "*ex parte* conferences with Paul Q. Herwick, M.D. regarding Dr. Herwick's medical care and treatment of Judy Testin." Dr. Herwick is not isolated from his colleagues at Dreyer, but is bound by the physician-patient privilege.

For the foregoing reasons, the orders of the circuit court of Kane County are affirmed.

Affirmed.

UNVERZAGT and DOYLE, JJ., concur.