*In re* MEDICAL MALPRACTICE CASES PENDING IN THE LAW DIVISION (Joseph Szfranski, Plaintiff-Appellant, v. Abdol Azaran *et al.*, Defendants-Appellees).

First District (3rd Division)    No. 1—02—1922

Opinion filed March 12, 2003.

---

WOLFSON, J., specially concurring.

Clifford Law Offices (Keith Hebeisen, of counsel), Bruce R. Pfaff & Associates (Bruce R. Pfaff, of counsel), and Joel H. Greenburg, Ltd. (Mark Szaflarski, of counsel), all of Chicago, for appellant.

Sidley, Austin, Brown & Wood (Eugene A. Schoon, Susan A. Weber, Tamar B. Kelber, and Kara L. McCall, of counsel), and Lord, Bissell & Brook (Hugh C. Griffin and Stevie A. Starnes, of counsel), both of Chicago, for appellees.

JUSTICE HOFFMAN delivered the opinion of the court:
This is a permissive interlocutory appeal brought pursuant to

Supreme Court Rule 308 (155 Ill. 2d R. 308). Central to our resolution of each of the five questions certified by the trial court is the interpretation of subsections (d) and (e) of section 6.17 of the Hospital Licensing Act (HLA) (210 ILCS 85/6.17(d), (e) (West 2000)). However, before addressing the certified questions, we will briefly set out the procedural history of the litigation giving rise to this appeal.

In its decision in *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 759 N.E.2d 533 (2001), our supreme court upheld the constitutionality of subsections (d), (e), and (h) of section 6.17 of the HLA (210 ILCS 85/6.17(d), (e), (h) (West 2000)). After the *Burger* decision was issued, the plaintiffs in numerous medical negligence actions pending in the circuit court of Cook County filed motions for protective orders, seeking, *inter alia*, to prohibit, limit or control communications between the attorneys and certain other agents of the defendant hospitals and the medical staff members, agents and employees of those hospitals who rendered medical care to the plaintiffs but whose treatment was not alleged to be the cause of the plaintiffs' injuries (hereinafter referred to as "non-*Morgan* health care providers" (see *Morgan v. County of Cook*, 252 Ill. App. 3d 947, 625 N.E.2d 136 (1993)). On January 29, 2002, the presiding judge of the law division of the circuit court of Cook County entered an order designating a single judge to hear all of these motions on a consolidated basis and directed that the cases proceed under a master docket number.

Following a hearing, the circuit court entered a "Memorandum Opinion and Order" in which it denied the plaintiffs' consolidated motions for protective orders with one exception. The circuit court held that, after a suit is filed, only a hospital defendant's attorney may communicate *ex parte* with the hospital's health care providers who rendered treatment to the plaintiff. The order specifically provided that: "Those parties responsible for peer review, utilization review, quality assurance and risk management are not to continue *ex parte* communications with patient's caregivers after the filing of a lawsuit." On the defendant hospitals' motion for reconsideration, the circuit court modified its order to provide that hospital employees and agents responsible for peer review, utilization review and quality assurance may continue to communicate *ex parte* with a patient's caregivers after a suit is filed against the hospital but reaffirmed its prior prohibition against risk managers doing so. In addition to ruling on the defendants' motion for reconsideration, the trial court also found that its resolution of the consolidated motions involved questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from its orders may materially advance the ultimate termination of the litigation. The circuit court set forth in its written order the following five questions of law involved:

"1. After a medical negligence case is filed against a hospital, may hospital counsel communicate *ex parte* with plaintiff's non-Morgan health care providers?

2. After a medical negligence case is filed against a hospital, may parties at the hospital responsible for peer review, defense of claims, quality assurance and utilization review communicate *ex parte* with plaintiff's non-Morgan health care providers?

3. Do the HLA and the MCRPRA [Managed Care Reform and Patient Rights Act (215 ILCS 134/1 *et seq.* (West 2000))] conflict so as to prohibit enforcement of the HLA amendments relating to *ex parte* communications between hospital counsel and persons responsible for risk management with non-Morgan health care providers?

4. Do the conflicts between the HLA and the MHDDCA [Mental Health and Developmental Disabilities Confidentiality Act (740 ILCS 110/1 *et seq.* (West 2000))], PCCPCLA [Professional Counselor and Clinical Professional Counselor Licensing Act (225 ILCS 107/1 *et seq.* (West 2000))], and the CSWSWPA [Clinical Social Work and Social Work Practice Act (225 ILCS 20/1 *et seq.* (West 2000))] prohibit enforcement of the HLA amendments relating to *ex parte* communications between hospital counsel and persons responsible for risk management with non-Morgan health care providers?

5. Under the HLA, may those parties responsible for hospital risk management confer *ex parte* with non-Morgan health care providers after notice that a medical negligence suit has been filed against the hospital?"

The plaintiffs filed a timely application for leave to appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). This court granted leave to appeal and, as the circuit court failed to designate a lead case in these consolidated proceedings, we designated the instant case as such. For the reasons that follow, we answer certified questions 1, 2, and 5 in the affirmative and certified questions 3 and 4 in the negative.

Certified questions 1, 2 and 5 all deal with post-suit *ex parte* communications between a plaintiff's non-*Morgan* health care providers and a defendant hospital's legal counsel or those hospital employees responsible for peer review, utilization review, quality assurance, risk management, or defense of claims. In support of their consolidated motions for protective orders, the plaintiffs argued to the trial court, *inter alia*, that such post-suit *ex parte* communications: 1) infringe upon the plaintiff's right to privacy as guaranteed under the Illinois Constitution; 2) violate this court's holding in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986); and 3) are contrary to the strong public policy against *ex parte* communica-

tions with a patient's health care providers, which policy is grounded in the sanctity of the physician-patient relationship. They made similar arguments in their application for leave to appeal to this court pursuant to Supreme Court Rule 308. However, in the brief filed with this court, the plaintiff appears to limit the argument to one of public policy as embodied in the principles underlying the *Petrillo* doctrine.

■ Our resolution of certified questions 1, 2, and 5 requires that we interpret subsections (d) and (e) of section 6.17 of the HLA, which provide as follows:

"(d) No member of a hospital's medical staff and no agent or employee of a hospital shall disclose the nature or details of services provided to patients, except that the information may be disclosed to the patient, persons authorized by the patient, the party making treatment decisions, if the patient is incapable of making decisions regarding the health services provided, those parties directly involved with providing treatment to the patient or processing the payment for the treatment, those parties responsible for peer review, utilization review, quality assurance, risk management or defense of claims brought against the hospital arising out of the care, and those parties required to be notified under the Abused and Neglected Child Reporting Act, the Illinois Sexually Transmissible Disease Control Act, or where otherwise authorized or required by law.

(e) The hospital's medical staff members and the hospital's agents and employees may communicate, at any time and in any fashion, with legal counsel for the hospital concerning the patient medical record privacy and retention requirements of this Section and any care or treatment they provided or assisted in providing to any patient within the scope of their employment or affiliation with the hospital." 210 ILCS 85/6.17(d), (e) (West 2000).

■ The interpretation of a statute is a question of law which reviewing courts resolve *de novo*. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009 (1996). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature (*County of Du Page v. Graham, Anderson, Probst & White, Inc.*, 109 Ill. 2d 143, 151, 485 N.E.2d 1076 (1985)), an inquiry that begins with the language of the statute itself (*Advincula*, 176 Ill. 2d at 16). If the language of the statute is plain, clear and unambiguous, the intent of the legislature is to be ascertained therefrom and the statute will be given effect without resort to other aids for construction. *People v. Woodard*, 175 Ill. 2d 435, 443-44, 677 N.E.2d 935 (1997). In construing a statute, a court is not at liberty to depart from its plain language and meaning by reading into the statute exceptions, limitations, or conditions that the legislature did not express. *Woodard*, 175 Ill. 2d at 443.

Section 6.17(d) of the HLA clearly and unambiguously provides that employees and agents of a hospital, including members of its medical staff, may disclose the nature or details of services provided to a patient to, *inter alia*, those parties responsible for peer review, utilization review, quality assurance, risk management and the defense of claims brought against the hospital arising out of the care rendered to the patient. Section 6.17(e) clearly states that employees and agents of a hospital, including members of its medical staff, may communicate, at any time and in any fashion, with the hospital's legal counsel concerning any care or treatment they provided or assisted in providing to any patient within the scope of their employment or affiliation with the hospital. By their plain language, these statutory provisions encompass post-suit communications and neither of them imposes any restriction on such communications after a patient has filed suit against the hospital.

The clear and unambiguous language of subsections (d) and (e) of section 6.17 notwithstanding, the plaintiff urges us to answer certified question 1, 2 and 5 in the negative. However, we believe that each of the arguments proffered by the plaintiff both before the trial court and this court has already been rejected by our supreme court.

As stated earlier, in *Burger*, our supreme court upheld the constitutionality of subsections (d) and (e) of section 6.17 of the HLA. Specifically, our supreme court found that these statutory provisions do not violate a patient's right to privacy as guaranteed under sections 6 and 12 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§ 6, 12). *Burger*, 198 Ill. 2d at 50-60. The *Burger* court held that only unreasonable invasions of privacy are constitutionally forbidden and found that the limited intrahospital communications allowed pursuant to subsections (d) and (e) do not unreasonably invade a hospital patient's expectation of privacy. *Burger*, 198 Ill. 2d at 51-55. The supreme court concluded that subsections (d) and (e) of section 6.17 of the HLA "do not authorize the kind of 'substantial and unjustified' invasion of privacy that is prohibited by the Illinois Constitution." *Burger*, 198 Ill. 2d at 60.

In *Petrillo*, the court held that *ex parte* conferences between a defendant's attorney and a plaintiff's treating physician "jeopardize the sanctity of the physician-patient relationship and, therefore, are prohibited as against public policy." *Petrillo*, 148 Ill. App. 3d at 588. The *Petrillo* court reasoned that the physician-patient relationship demands that information disclosed by a patient in confidence "remain, absent patient consent, undisclosed to third parties." *Petrillo*, 148 Ill. App. 3d at 590. The supreme court in *Burger* reaffirmed its belief that the rationale underlying the decision in *Petrillo*

is sound, but rejected the argument that the intrahospital communications allowed by subsections (d) and (e) of section 6.17 of the HLA violate the *Petrillo* doctrine. The supreme court explained that:

"Unlike *Petrillo*, however, where confidential information was divulged during discovery to parties who otherwise would not possess the information absent the disclosure \*\*\*, the challenged provisions of the Act [subsections (d) and (e) of section 6.17 of the HLA] authorize limited intrahospital communication of information that is already the property of the hospital and is already known to the hospital's agents, including hospital counsel, irrespective of the filing of a lawsuit. The hospital is not a third party with respect to its own medical information, which is compiled by the hospital's own caregivers." *Burger*, 198 Ill. 2d at 57.

Based on the *Burger* court's holding in this regard, several of the decisions relied upon by the plaintiff which reaffirmed the *Petrillo* doctrine in circumstances where the defendant was a third party in relation to the plaintiff's treating physician are readily distinguishable. See *Kunkel v. Walton*, 179 Ill. 2d 519, 689 N.E.2d 1047 (1997); *Young v. Makar*, 207 Ill. App. 3d 337, 565 N.E.2d 1030 (1991); *Karsten v. McCray*, 157 Ill. App. 3d 1, 509 N.E.2d 1376 (1987).

The plaintiff also relies upon the decision in *Ritter v. Rush-Presbyterian-St. Luke's Medical Center*, 177 Ill. App. 3d 313, 532 N.E.2d 327 (1988), which addressed the application of the *Petrillo* doctrine in circumstances where an attorney representing a defendant hospital in a medical negligence action conducted post-suit *ex parte* interviews of several of the plaintiff's treating physicians who were on staff at the defendant hospital. In rejecting the argument that the public policy underlying the *Petrillo* doctrine should not be extended to include such communications, the *Ritter* court held, *inter alia*, that any agency principles applicable to the relationship between a hospital and an employee-physician do not outweigh the public policy considerations underlying the physician-patient privilege. *Ritter*, 177 Ill. App. 3d at 317. In so holding, the court refused to equate the communication of information between hospital personnel for purposes of treating a patient or complying with some statutory duty with communication of a patient's confidential information by staff physicians to a hospital's attorneys for purposes of defending a lawsuit brought by the patient. *Ritter*, 177 Ill. App. 3d at 317. The *Ritter* court also rejected the argument that, by disclosing information to a hospital's staff physician for purposes of obtaining medical treatment, a patient either evidenced an expectation that the information would not be kept from the hospital or waived the physician-patient privilege. *Ritter*, 177 Ill. App. 3d at 318. Relying upon the reasoning in *Ritter*, the

plaintiff argues the public policy behind allowing *ex parte* communications between hospital personnel for purposes of providing treatment to a patient or complying with statutory requirements enacted to ensure quality medical care is absent when the purpose of the communication is the defense of a lawsuit against the hospital. Although we cannot deny the reasonableness of the distinction drawn by the plaintiff in this regard, we believe that the argument has been foreclosed by the holding in *Burger*.

In addition to distinguishing the intrahospital communications allowed by the HLA from the disclosure of confidential medical information to third parties that was at issue in *Petrillo*, the *Burger* court held that the provisions of subsections (d) and (e) of section 6.17 "do not unreasonably invade a hospital patient's right to privacy." *Burger*, 198 Ill. 2d at 55. The *Burger* court reasoned that "[i]n light of the reality of contemporary hospital operations, *** a hospital patient could not reasonably expect a member of the hospital's medical staff, or the hospital's agents and employees, to refrain from discussing, within the narrow parameters set forth in subsections (d) and (e) of section 6.17 of the Act [HLA], the medical care provided to the patient with the hospital, which is ultimately responsible for the patient's care," and concluded that patients have a "reduced expectation of privacy with respect to the communication of their hospital medical information within the hospital setting." *Burger*, 198 Ill. 2d at 53. Unlike the court in *Ritter*, the *Burger* court did not directly address intrahospital communications conducted for the specific purpose of defending a lawsuit brought against the hospital by a patient. Nevertheless, our supreme court agreed with the assertion that subsections (d) and (e) of section 6.17 "are not violative of the principles which support the *Petrillo* holding." *Burger*, 198 Ill. 2d at 51. The *Burger* court also declined to draw a distinction between pre- and post-suit communications, reasoning that:

> "when a patient institutes a legal action against a hospital, the patient cannot validly claim any greater expectation of privacy after the lawsuit is filed than prior to its filing. Indeed, under *Petrillo*, the filing of a lawsuit diminishes, rather than increases, a patient's expectations of privacy in information related to the mental or physical condition which the plaintiff has placed at issue in the legal action. *Petrillo*, 148 Ill. App. 3d at 591. We find it significant that the act of instituting a lawsuit against a hospital does not alter the fact that, pursuant to subsection (b) of section 6.17 of the Act [HLA], the hospital may communicate with the plaintiff's caregivers about the plaintiff's care before the commencement of the legal action. Accordingly, if the hospital may access this

patient information before litigation ensues because it is hospital information, it remains hospital information after the initiation of litigation. The filing of a lawsuit affects neither the nature of this information nor the hospital's right or ability to access its own information about the care and treatment rendered to the patient at the hospital by its own caregivers." *Burger*, 198 Ill. 2d at 58.

■ Based upon the foregoing analysis, we answer certified questions 1, 2 and 5 in the affirmative and hold that, after a medical negligence case has been filed against a hospital, the defendant hospital's counsel and those of its employees and agents responsible for peer review, defense of claims, quality assurance, utilization review, and risk management may communicate *ex parte* with the plaintiff's non-*Morgan* health care providers who, in the course of their employment or affiliation with the defendant hospital, provided or assisted in providing care or treatment to the plaintiff. However, the fact that such post-litigation intrahospital communications are allowed by statute in no sense diminishes the power of the circuit court to regulate the discovery process during litigation and to enter protective orders when, under the particular circumstances of any given case, justice may so require. *Burger*, 198 Ill. 2d at 47.

Next, we address certified question number 3. The plaintiff argues that an irreconcilable conflict exists between the recognition of a patient's right to privacy and confidentiality in health care as set forth in section 5(a)(4) of the Managed Care Reform and Patient Rights Act (MCRPRA) (215 ILCS 134/5(a)(4) (West 2000)) and the provisions of subsections (d) and (e) of section 6.17 of the HLA which allow a defendant hospital's counsel and those of its employees responsible for risk management to engage in communications with the plaintiff's non-*Morgan* health care providers. Based upon this alleged conflict, the plaintiff asserts that the provisions of subsections (d) and (e) permitting such communications are unenforceable. Because we find no conflict between the provisions of the HLA and the MCRPRA, we reject the plaintiff's argument on this issue.

■ ■ When faced with an alleged conflict between two statutes, courts have a duty to construe the statutes in such a manner as to avoid any inconsistency and give effect to both statutes, where such an interpretation is reasonably possible. *McNamee v. Federated Equipment & Supply Co.*, 181 Ill. 2d 415, 427, 692 N.E.2d 1157 (1998). Section 5(a)(4) of the MCRPRA provides that "[a] patient has the right to privacy and confidentiality in health care," but the statute is silent as to the meaning and scope of "privacy and confidentiality." 215 ILCS 134/5(a)(4) (West 2000). The HLA also protects the privacy rights of a hospital patient by generally prohibiting disclosure of the nature and

details of services rendered to the patient (see 210 ILCS 85/6.17(d) (West 2000)) and providing a criminal penalty for any individual who willfully and wantonly discloses hospital or medical record information in violation of the statute (210 ILCS 85/6.17(i) (West 2000)). Nevertheless, the HLA does permit intrahospital communications relating to the care and treatment rendered to a patient between employees and agents of a hospital, including members of its medical staff, and both the hospital's legal counsel and those parties responsible for risk management. See 210 ILCS 85/6.17(d), (e) (West 2000). However, we do not believe that the communications allowed under the Act render the statute inconsistent with the MCRPRA.

■ The right of privacy is not absolute. Our supreme court has already determined that the limited intrahospital communications allowed pursuant to subsections (d) and (e) of section 6.17 of the HLA "do not unreasonably invade a hospital patient's expectation of privacy." *Burger*, 198 Ill. 2d at 52. We interpret the right of privacy and confidentiality recognized in section 5(a)(4) of the MCRPRA to encompass only a patient's reasonable expectation of privacy and confidentiality and hold that there is no inconsistency between that statute and the provisions of the HLA permitting limited intrahospital disclosure of the nature or details of the care and treatment provided to a patient. Further, as the defendants point out, section 5(a)(1) of the MCRPRA states that a patient's right to privacy and confidentiality relating to medical records is subject to exceptions as "provided by law." 215 ILCS 134/5(a)(1) (West 2000). Subsections (d) and (e) of section 6.17 of the HLA provide for such exceptions.

Finding no conflict between the provisions of the HLA and the MCRPRA, we answer certified question number 3 in the negative.

■ Lastly, we address certified question number 4. This question raises the issue of whether certain unspecified conflicts between the HLA and the provisions of the Mental Health and Developmental Disabilities Confidentiality Act (MHDDCA) (740 ILCS 110/1 *et seq.* (West 2000)), the Professional Counselor and Clinical Professional Counselor Licensing Act (PCCPCLA) (225 ILCS 107/1 *et seq.* (West 2000)), and the Clinical Social Work and Social Work Practice Act (CSWSWPA) (225 ILCS 20/1 *et seq.* (West 2000)) prohibit enforcement of the HLA amendments relating to *ex parte* communications between hospital counsel and persons responsible for risk management with a patient's non-*Morgan* health care providers.

The plaintiff asserts that the provisions of subsections (d) and (e) of section 6.17 of the HLA conflict with the following statutory provisions: 1) section 3(a) of the MHDDCA, which provides that all records and communications shall be confidential and shall not be disclosed

except as provided in that act (740 ILCS 110/3(a) (West 2000)); 2) section 75 of the PCCPCLA, which provides that no licensed professional counselor or licensed clinical professional counselor shall disclose any information acquired from persons consulting the counselor in a professional capacity, except under the circumstances specified in that section of the statute (225 ILCS 107/75 (West 2000)); and 3) section 16 of the CSWSWPA, which provides that no licensed clinical social worker or licensed social worker shall disclose any information acquired from persons consulting the social worker in a professional capacity, except under the circumstances specified in that section of the statute (225 ILCS 20/16 (West 2000)). Based on the far more restrictive disclosure provisions of these statutes, the plaintiff argues that a hospital's attorney should be "prohibited from having *ex parte* conversations with a plaintiff's health care providers" and urges us to answer certified question number 4 in the affirmative.

The plaintiff correctly argues that, where there exists a general statutory provision in one act and a specific statutory provision in another act which relate to the same subject, the specific provision controls. *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195, 595 N.E.2d 561 (1992). However, this rule of statutory construction does not support the sweeping conclusion drawn by the plaintiff, nor does it support an affirmative answer to certified question number 4.

The confidentiality provisions of the MHDDCA, PCCPCLA and CSWSWPA apply, respectively, to: records relating to or communications made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient (see 740 ILCS 110/2 (West 2000)); information acquired by licensed professional counselors and licensed clinical professional counselors (225 ILCS 107/75 (West 2000)); and information acquired by licensed clinical social workers and licensed social workers (225 ILCS 20/16 (West 2000)). None of these statutes apply to the disclosure of information acquired by any health care professional other than those specified in the statute. Although it might be argued that the confidentiality provisions of these statutes control the disclosure of information by the professionals specified therein, no principled argument can be made that the specific confidentiality provisions of these statutes somehow render the general provisions of the HLA relating to intrahospital communications between a patient's non-*Morgan* health care providers and either a hospital's attorney or its risk managers unenforceable in all circumstances. Consequently, we answer certified question number 4 in the negative.

■ Based upon our answer to the questions certified by the circuit court, we: reverse that portion of its order barring hospital risk managers from communicating *ex parte* with a patient's non-*Morgan* health care providers after the patient has filed suit against the hospital; affirm in all other respects the circuit court's "Memorandum Opinion and Order" of May 17, 2002, as modified by its order of June 25, 2002; and remand this matter to the circuit court for further proceedings consistent with this opinion.

Certified questions answered; affirmed in part and reversed in part; cause remanded.

SOUTH, P.J., concurs.

JUSTICE WOLFSON, specially concurring:

I have no disagreement with the majority's well-considered answers to the certified questions, although the answers address questions that are broad and without specificity. For example, the questions do not suggest the nature of the *ex parte* communications referred to, nor do they define the status or identity of the "health care providers" who might be contacted.

I write this specially concurring opinion because the majority observes that while the statute allows postlitigation intrahospital communications, that fact "in no sense diminishes the power of the circuit court to regulate the discovery process during litigation and to enter protective orders when, under the particular circumstances of any given case, justice may so require." 337 Ill. App. 3d at 1025.

I know the supreme court used similar language in *Burger v. Lutheran General Hospital*, 198 Ill. 2d 21, 47, but it was *dicta* then and it is *dicta* now, unnecessary to our decision in this case. Trial judges quite rightly will wonder what the quoted language means. We offer no guidance. Are they free to prohibit *ex parte* communications with non-*Morgan* health care providers simply because discovery is under way? Why? Under what circumstances?

The matter of protective orders was not before us and we should have stayed away from it, waiting for the day when the issue is properly framed and presented.