(Nos. 89643, 89644 cons.—

DORIS BURGER, Appellee, v. LUTHERAN GEN-
ERAL HOSPITAL *et al.*, Appellants.

*Opinion filed October 18, 2001.—Rehearing denied*
*December 3, 2001.*

HARRISON, C.J., joined by FITZGERALD and KILBRIDE, JJ., dissenting.

Eugene A. Schoon, Susan A. Weber and Darin V. Osmond, of Sidley & Austin, of Chicago, for appellants Lutheran General Hospital *et al.*

Hugh C. Griffin, Hugh S. Balsam and Sarah H. Dearing, of Lord, Bissell & Brook, of Chicago, for appellants Rush-Presbyterian-St. Luke's Medical Center *et al.*

Keith A. Hebeisen, of Clifford Law Offices, and Bruce R. Pfaff, all of Chicago, for appellee.

Richard A. Devine, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for *amicus curiae* County of Cook.

Thaddeus J. Nodzenski and Mark D. Deaton, of Naperville, for *amicus curiae* Illinois Hospital & Healthsystems Association.

Herbert H. Franks and Dennis A. Rendleman, of Springfield, for *amicus curiae* Illinois State Bar Association.

JUSTICE McMORROW delivered the opinion of the court:

At issue in these consolidated cases is whether certain provisions of section 6.17 of the Hospital Licensing Act (Act) (210 ILCS 85/6.17 (West 2000)), as amended by Public Act 91—526 (Pub. Act 91—526, eff. January 1, 2000), violate the Illinois Constitution of 1970. The circuit court of Cook County held that portions of sections 6.17(d) and (e) and all of section 6.17(h) violate the doctrine of separation of powers (Ill. Const. 1970, art. II, § 1). The circuit court also found that portions of subsections (d) and (e) of section 6.17 violate a patient's right to privacy with respect to medical information (Ill. Const.

1970, art. I, §§ 6, 12). However, the circuit court rejected plaintiff's contention that the challenged provisions of the Act constituted impermissible special legislation. Ill. Const. 1970, art. IV, § 13. The circuit court severed the provisions it found unconstitutional from the remainder of section 6.17. Defendants appealed directly to this court. 134 Ill. 2d R. 302(a). For the reasons that follow, we reverse in part, affirm in part, and remand this cause to the circuit court for further proceedings.

## BACKGROUND

During the early afternoon of December 12, 1996, plaintiff, Doris Burger, went to the emergency room of Lutheran General Hospital (Hospital) with a leg injury. Within a few hours, after examination and treatment, plaintiff was released. On the evening of December 13, 1996, plaintiff was admitted to the Hospital for intravenous antibiotic therapy. On December 16, 1996, plaintiff's leg was amputated at the knee. Plaintiff thereafter filed a medical malpractice complaint in the law division of the circuit court of Cook County, naming four doctors, the Hospital and the Hospital's parent corporation as defendants. Plaintiff alleged that the Hospital was negligent in the care provided to her in the Hospital's emergency room on December 12, 1996. In addition, plaintiff alleged that the Hospital was negligent in several respects during her admission from December 13 to December 16, 1996.

Discovery in plaintiff's case was ongoing at the time that Public Act 91—526 became effective on January 1, 2000. This Public Act, which was unanimously passed by the Illinois General Assembly, amended section 6.17 of the Act, which governs protection of, and confidential access to, a hospital patient's medical records and information. Public Act 91—526 added several new subsections to section 6.17, including subparagraphs (d) and (e), which are challenged by plaintiff in this appeal. Public

Act 91—526 also relettered the subsections which were originally part of the preamended version of section 6.17. One of these provisions, now lettered as subparagraph (h), is also challenged by plaintiff at bar. Pertinent provisions of section 6.17 provide:

"(a) Every hospital licensed under this Act shall develop a medical record for each of its patients as required by the Department [of Public Health of the State of Illinois] by rule.

(b) All information regarding a hospital patient gathered by the hospital's medical staff and its agents and employees shall be the property and responsibility of the hospital and must be protected from inappropriate disclosure as provided in this Section.

\*\*\*

(d) No member of a hospital's medical staff and no agent or employee of a hospital shall disclose the nature or details of services provided to patients, except that the information may be disclosed to the patient, persons authorized by the patient, the party making treatment decisions, if the patient is incapable of making decisions regarding the health services provided, those parties directly involved with providing treatment to the patient or processing the payment for that treatment, those parties responsible for peer review, utilization review, quality assurance, risk management or defense of claims brought against the hospital arising out of the care, and those parties required to be notified under the Abused and Neglected Child Reporting Act, the Illinois Sexually Transmissible Disease Control Act, or where otherwise authorized or required by law.

(e) The hospital's medical staff members and the hospital's agents and employees may communicate, at any time and in any fashion, with legal counsel for the hospital concerning the patient medical record privacy and retention requirements of this section and any care or treatment they provided or assisted in providing to any patient within the scope of their employment or affiliation with the hospital.

\* \* \*

(h) Any person who, in good faith, acts in accordance with the terms of this Section shall not be subject to any type of civil or criminal liability or discipline for unprofessional conduct for those actions.

(i) Any individual who willfully and wantonly discloses hospital or medical record information in violation of this Section is guilty of a Class A misdemeanor. As used in this subsection, 'wilfully or wantonly' means a course of action that shows an actual or deliberate intention to cause harm or that, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 210 ILCS 85/6.17(a), (b), (d), (e), (h), (i) (West 2000).

On January 19, 2000, plaintiff filed with the circuit court an emergency motion to bar *ex parte* communication between the Hospital's counsel and those members of its medical staff, agents, and employees who provided health care to plaintiff but were not named as defendants in plaintiff's complaint. Plaintiff's motion also requested that the circuit court declare subsection (e) of section 6.17 unconstitutional on the basis that it violates the separation of powers and the personal privacy rights of Illinois plaintiffs. The circuit court ordered that, pending disposition on the merits of plaintiff's motion, counsel for the Hospital was not to communicate outside the presence of plaintiff's attorney with any of plaintiff's health-care providers, other than those who were specifically alleged to be negligent in plaintiff's complaint and whose negligence could be imputed to the Hospital. On February 3, 2000, plaintiff filed with the circuit court an amended motion wherein plaintiff additionally sought the invalidation of subparagraphs (d) and (h) of section 6.17 of the Act.

At the time plaintiff filed these motions in the circuit court of Cook County, several similar motions were pending in that court's law division. On February 17, 2000, the presiding judge of the law division of the Cook County circuit court entered an order intended to "efficiently and fairly deal with the multitude of motions" filed in the law division which challenged the constitutionality of

section 6.17 of the Act. The order stated that the "interests of justice and judicial economy are best served by the designation of one judge to hear the motions on a consolidated basis." Plaintiff's case was thereafter designated the lead case in the consolidated proceedings.

With the leave of the circuit court, plaintiff filed a fifth complaint at law on February 18, 2000, which added a fourth count to plaintiff's action. Count I of plaintiff's complaint, captioned "entity liability," alleges that on December 12, 1996, and on December 13 through 16, 1996, the Hospital and its parent corporations, "acting through their employees and agents," negligently failed to admit plaintiff to the hospital, failed to provide "timely and competent physician care," failed to "properly diagnose and treat her condition of ill being," failed to "obtain timely and appropriate consultations," and negligently discharged plaintiff from the emergency room. Plaintiff did not identify by name any employee or agent of the Hospital as a defendant in this count. Counts II and III of plaintiff's complaint alleged specific acts of negligence by certain named physicians "acting within the scope and course of their agency relationship" with the Hospital and its parent corporations. The newly added count IV requested that the circuit court declare Public Act 91—526 unconstitutional and enjoin its operation. On that same day, plaintiff also filed a motion for judgment on the pleadings as to count IV of her complaint.

On May 10, 2000, the circuit court issued a written memorandum opinion and order. The court determined that its decision was controlled by this court's rulings in *Kunkel v. Walton*, 179 Ill. 2d 519 (1997), and *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), wherein this court held that several provisions of the Civil Justice Reform Act of 1995 were unconstitutional. Applying the reasoning of *Kunkel* and *Best* to the matter at bar, the

circuit court determined that portions of sections 6.17(d) and (e) and all of section 6.17(h) violated the doctrine of separation of powers. The circuit court drew an analogy between certain provisions contained in subparagraphs (d) and (e) of section 6.17 and the amendment to section 2—1003(a) of the Code of Civil Procedure (735 ILCS 5/2—1003(a) (West 1998)), which was held to violate the separation of powers doctrine in *Kunkel* and *Best*. The circuit court found that the provisions of subsections (d) and (e), allowing *ex parte* communications between agents and employees of the Hospital and the Hospital's risk managers and legal counsel with respect to any care or treatment provided to a patient of the Hospital within the scope of the treater's Hospital employment, were "constitutionally problematic" because the provisions fail to limit discovery to issues relevant to the allegations raised by plaintiff in her medical malpractice action.

In addition, the circuit court determined that the immunity provisions contained within subparagraph (h) of section 6.17 violate the doctrine of separation of powers because these provisions "clash" with Supreme Court Rule 219 (166 Ill. 2d R. 219), which authorizes a circuit court to impose a range of sanctions for a party's failure to comply with supreme court rules or court orders relating to discovery. Further, the circuit court determined that "the presumed effect of [sub]section [h] would prohibit, or at least impinge upon," the authority of the Attorney Registration and Disciplinary Commission (ARDC) and this court to review attorney conduct.

The circuit court judge also determined that, pursuant to our decisions in *Kunkel* and *Best*, subparagraphs (d) and (e) of section 6.17 constitute an unreasonable invasion of plaintiff's constitutional privacy interest. The decision of the circuit court was premised primarily upon the lack of relevancy restrictions in both subparagraphs. In addition, the circuit court found that the harm caused

to a hospital patient's privacy interests outweighed the public interest served by disclosure.

The circuit court, however, rejected the argument proffered by plaintiff that subsections (d) and (e) of section 6.17 constitute impermissible special legislation, in violation of article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). The circuit court disagreed with plaintiff that the statute created an arbitrary classification between different types of defendants. The circuit court stated that "[d]ue to the unique nature of hospital defendants, this court finds them distinguishable from other classes of defendants. A hospital's involvement in a medical malpractice lawsuit is notably different from that of other tort defendants." The circuit court further found that Public Act 91—526 rationally related to the legislative purpose sought to be accomplished by the revisions to the Act.

Finally, the circuit court concluded that the constitutionally valid portions of section 6.17 of the Act were "substantial measures, capable of standing independently of the invalidated provisions." Accordingly, the circuit court severed the invalid provisions from the remainder of section 6.17.

On May 18, 2000, the circuit court entered a judgment order in favor of plaintiff on count IV of her fifth complaint, "finding that the challenged sections of 210 ILCS 85/6.17(d), (e) and (h) are unconstitutional for the reasons set forth in the memorandum opinion and order," and that the "operation and enforcement of the challenged portions of subsections (d), (e) and (h) are enjoined." In accordance with the order, the circuit court barred any *ex parte* communication between hospital defense counsel or risk managers and any health-care provider of plaintiff for "whose conduct plaintiff does not seek to hold the hospital vicariously liable."

Direct appeal was taken to this court by two groups

of defendants. 134 Ill. 2d R. 302(a). Those appeals have been consolidated.[1] We allowed *amicus curiae* briefs to be filed by the County of Cook, the Illinois Hospital and Healthsystems Association, and the Illinois State Bar Association.

## ANALYSIS

This appeal presents the principal issues of whether the provisions contained within subsections (d), (e) and (h) of section 6.17 of the Act violate the doctrine of separation of powers found in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1), and whether subparagraphs (d) and (e) infringe upon a patient's privacy interest in confidential medical information derived from article I, sections 6 and 12, of our constitution (Ill. Const. 1970, art. I, §§ 6, 12). The constitutionality of a statute is a question of law subject to *de novo* review. *Miller v. Rosenberg*, 196 Ill. 2d 50, 57 (2001); *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420 (1996). Statutes are presumed to be constitutional, and the party challenging the validity of the statute has the burden to clearly establish constitutional invalidity. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 351

---

[1]Each group of defendants has submitted a separate brief to this court. One brief is submitted on behalf of defendants Rush-Presbyterian-St. Luke's Medical Center, Resurrection Hospital, Northwestern Memorial Hospital, Michael Reese Hospital and Medical Center, Hoffman Estates Medical Center, Northwest Community Hospital, Sherman Hospital, Holy Cross Hospital, Alexian Brothers Medical Center, Norwegian American Hospital, Oak Park Hospital, St. Mary of Nazareth Hospital, Swedish Covenant Hospital, and Westlake Community Hospital. A second brief is submitted on behalf of defendants Loyola University Medical Center, The University of Chicago Hospitals, Lutheran General Hospital, Advocate Health Care Network, Children's Memorial Hospital, and the Rehabilitation Institute of Chicago. In this opinion, we collectively refer to the two defendant groups as "defendants."

(1999); *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 441 (1998). A court must construe a statute so as to affirm its constitutionality if the statute is reasonably capable of such a construction. *Russell*, 183 Ill. 2d at 441. Accordingly, " 'if [a] statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity.' " *Miller*, 196 Ill. 2d at 58, quoting *People v. Shephard*, 152 Ill. 2d 489, 499 (1992).

Plaintiff at bar urges us to affirm the judgment of the circuit court that, based upon the reasoning of our decisions in *Kunkel* and *Best*, subsections (d), (e) and (h) of section 6.17 of the Act violate the separation of powers doctrine and that, in addition, subparagraphs (d) and (e) unconstitutionally infringe upon a patient's protected privacy interests. Defendants and *amici* Cook County and Illinois Hospital and Healthsystems Association respond that both plaintiff in her argument and the circuit court in its decision ignore the compelling health-care policy concerns that support the enactment of Public Act 91—526 and err in exclusively focusing upon the potential effect of these provisions in the event a patient institutes medical malpractice litigation against a hospital. Defendants and *amici* also respond that plaintiff and the circuit court misapplied this court's rulings in *Kunkel* and *Best* to the facts presented at bar. We begin our analysis by addressing plaintiff's separation of powers claim.

I. Separation of Powers

The Illinois Constitution provides that the legislative, executive and judicial branches are separate, and that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Article VI, section 1, of the Illinois Constitution of 1970 vests the judicial power of this state in the supreme court, the appellate court, and the circuit courts.

In " 'both theory and practice, the purpose of the [separation of powers] provision is to ensure that the

whole power of two or more branches of government shall not reside in the same hands.' " *Best*, 179 Ill. 2d at 410, quoting *People v. Walker*, 119 Ill. 2d 465, 473 (1988). However, the doctrine of separation of powers "was not designed to achieve a complete divorce among the three branches of government" (*In re J.J.*, 142 Ill. 2d 1, 7 (1991); accord *Strukoff v. Strukoff*, 76 Ill. 2d 53, 58 (1979)) and does not require "governmental powers to be divided into rigid, mutually exclusive compartments" (*In re J.J.*, 142 Ill. 2d at 7; *In re Estate of Barker*, 63 Ill. 2d 113, 119 (1976)). Because the "separation of the three branches of government is not absolute and unyielding" (*Best*, 179 Ill. 2d at 411), the doctrine of separation of powers "is not contravened merely because separate spheres of governmental authority may overlap" (*Best*, 179 Ill. 2d at 411; see also *People ex rel. Devine v. Murphy*, 181 Ill. 2d 522, 530 (1998); *McAlister v. Schick*, 147 Ill. 2d 84, 94 (1992); *In re J.J.*, 142 Ill. 2d at 7).

Indeed, we have previously observed that "[w]here matters of judicial procedure are at issue, the constitutional authority to promulgate procedural rules can be concurrent between the court and the legislature. The legislature may enact laws that complement the authority of the judiciary or that have only a peripheral effect on court administration." *Kunkel*, 179 Ill. 2d at 528; *People v. Williams*, 124 Ill. 2d 300, 306 (1988). If a statute conflicts with a rule of the judiciary, a court will seek to reconcile the legislation with the judicial rule, where reasonably possible. *Kunkel*, 179 Ill. 2d at 529; *Williams*, 124 Ill. 2d at 306. This court, however, retains primary constitutional authority over court procedure, and the doctrine of separation of powers is violated "when a legislative enactment unduly encroaches upon the inherent powers of the judiciary, or directly and irreconcilably conflicts with a rule of this court on a matter within the court's authority." *Kunkel*, 179 Ill. 2d at 528.

### A. Subparagraphs (d) and (e)

We first address plaintiff's separation of powers challenge to subparagraphs (d) and (e) of section 6.17 of the Act. In her brief to this court, plaintiff contends that "[t]he decision of *Best v. Taylor Machine Works* and *Kunkel v. Walton*, through the operation of *stare decisis*, control this issue." Thus, plaintiff's constitutional challenge is almost exclusively premised upon the general argument that just as the provisions of section 2—1003(a) of the Code of Civil Procedure (735 ILCS 5/2—1003(a) (West 1996)) were found to violate the separation of powers doctrine in *Kunkel* and *Best*, the provisions of subparagraphs (d) and (e) should also be invalidated because they violate the separation of powers "in the same manner." Because the primary focus of plaintiff's separation of powers argument is that subsections (d) and (e) of section 6.17 are analogous to section 2—1003(a), which was invalidated in *Kunkel* and *Best*, we review those decisions in some detail.

In *Kunkel v. Walton*, 179 Ill. 2d 519 (1997), and *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997), the plaintiffs challenged as unconstitutional section 2—1003(a) of the Code of Civil Procedure (735 ILCS 5/2—1003(a) (West 1996)), which had been amended by Public Act 89—7, a legislative package more popularly known as the Civil Justice Reform Act of 1995.[2] The amended section 2—1003(a) mandated that all plaintiffs filing personal injury claims waive their physician-patient privilege and disclose all medical records to any defendant party, irrespective of the relevance of those medical records to the plaintiff's lawsuit. Section 2—1003(a) provided, in pertinent part:

"Any party who by pleading alleges any claim for bodily injury or disease, including mental health injury or dis-

---

[2] Both *Kunkel* and *Best* were under advisement by this court at the same time.

ease, shall be deemed to waive any privilege between the injured person and each health care provider who has furnished care at any time to the injured person. \*\*\* Any party alleging any such claim \*\*\* shall, upon written request of any other party who has appeared in the action, sign and deliver within 28 days to the requesting party a separate Consent authorizing each person or entity who has provided health care at any time to the allegedly injured person to:

(1) furnish the requesting party or the party's attorney a complete copy of the chart or record of health care in the possession of the provider \*\*\*;

(2) permit the requesting party or the party's attorney to inspect the original chart or record of health care \*\*\*;

(3) accept and consider charts and other records of health care by other, radiographic films, and documents, including reports, deposition transcripts, and letters, furnished to the health care provider by the requesting party or the party's attorney, before giving testimony in any deposition or trial or other hearing;

(4) confer with the requesting party's attorney before giving testimony in any deposition or trial or other hearing and engage in discussion with the attorney on the subjects of the health care provider's observations related to the allegedly injured party's health, including the following: the patient history \*\*\*; the health care provider's opinions related to the patient's state of health, prognosis, etiology, or cause of the patient's state of health at any time \*\*\*.

\* \* \*

A request for a Consent under this subsection (a) does not preclude such subsequent requests as may reasonably be made seeking to expand the scope of the earlier Consent which was limited to less than all the authority permitted by subdivisions (1) through (4) of this subsection (a) or seeking additional Consents for other health care providers.

The provisions of this subsection (a) do not restrict the right of any party to discovery pursuant to rule." 735 ILCS 5/2—1003(a) (West 1996).

Section 2—1003(a) further provided that if a party claiming injury refused to comply with a request for a consent, the trial court was required to either issue an order authorizing the disclosure or dismiss the plaintiff's case with prejudice. 735 ILCS 5/2—1003(a) (West 1996).

We determined in *Kunkel* and *Best* that section 2—1003(a) violated the doctrine of the separation of powers on two grounds. We held that the express terms of section 2—1003(a) precluded the circuit court from exercising its inherent authority pursuant to Supreme Court Rule 201 (166 Ill. 2d Rs. 201(b)(1), (c)(1)) to assess the relevance of discovery and to issue protective orders, where appropriate. *Kunkel*, 179 Ill. 2d at 531-32; *Best*, 179 Ill. 2d at 434-44. In addition, we held that section 2—1003(a) prevented the circuit court from exercising its power to impose appropriate sanctions for abuse of discovery procedures pursuant to Illinois Supreme Court Rule 219 (166 Ill. 2d R. 219). We found that, by virtue of the mandatory language used in the statute, section 2—1003(a) "obligate[d] the courts of this state to become party to the forced disclosure of confidential medical information *even if such material is wholly unrelated to the lawsuit in issue*, or, if the plaintiff refuses to comply, to enter an order of involuntary dismissal." (Emphasis in original.) *Best*, 179 Ill. 2d at 442. We further observed that, under this statutory scheme, a plaintiff would face the ultimate penalty of forfeiting his or her right of legal action as a consequence for not consenting to the blanket disclosure of all confidential medical information. *Best*, 179 Ill. 2d at 442.

Specifically, we held that the mandatory consent procedures set forth in section 2—1003(a) circumvented the relevance requirement found in Supreme Court Rule 201(b)(1) (166 Ill. 2d R. 201(b)(1)), which provides that

during discovery a party must fully disclose "any matter relevant to the subject matter involved in the pending action." We held that the disclosure mandated by section 2—1003(a) was "described in the broadest possible terms" (*Kunkel*, 179 Ill. 2d at 532), requiring "maximum disclosure" (*Best*, 179 Ill. 2d at 444-45) of the plaintiff's medical information by each person or entity who had provided health care to the plaintiff at any time to all the defendant parties in the action. We determined that absent language restricting the disclosure of information to only that which was relevant to the particular injuries upon which the plaintiff's lawsuit is based, the consent procedure set forth in section 2—1003(a) went "well beyond the legitimate objectives of discovery as reflected in this court's rules" and, in fact, appeared to be "designed to discourage tort victims from pursuing valid claims by subjecting them to the threat of harassment and embarrassment through unreasonable and oppressive disclosure requirements." *Kunkel*, 179 Ill. 2d at 532.

We also held that section 2—1003(a) conflicted with Supreme Court Rule 201(c)(1) (166 Ill. 2d R. 201(c)(1)), which authorizes the circuit court, when appropriate, to issue protective orders to shield particularly sensitive materials from unnecessary disclosure. Based upon the statute's clear and unequivocal language requiring a plaintiff to disclose medical information without limitation, we held that the "absolute and unqualified" disclosure mandated by section 2—1003(a) completely foreclosed the circuit court from regulating the scope of discovery, including the issuance of protective orders. *Kunkel*, 179 Ill. 2d at 534-36, *Best*, 179 Ill. 2d at 447.

Finally, we held that section 2—1003(a) conflicted with Supreme Court Rule 219 (166 Ill. 2d R. 219), which lists a noninclusive range of sanctions which a circuit court, in its discretion, may impose upon litigants to address discovery violations and abuses. *Best*, 179 Ill. 2d at

449. We concluded that section 2—1003(a) unduly infringed upon the court's authority under this rule by requiring the court to dismiss a plaintiff's lawsuit, with prejudice, if the plaintiff failed to follow the statutory disclosure requirements. *Best*, 179 Ill. 2d at 441-42; see also *Kunkel*, 179 Ill. 2d at 528-37. Section 2—1003(a) totally precluded a circuit court from exercising its broad discretion in selecting an appropriate sanction for violation of discovery abuses, instead authorizing the court to impose only one harsh sanction for a plaintiff's failure to comply with the statute.

In the matter at bar, the primary focus of plaintiff's constitutional challenge is that subparagraphs (d) and (e) of section 6.17 of the Act violate the separation of powers because they impermissibly interfere with the judiciary's authority to regulate discovery "in the same manner" as section 2—1003(a), which was struck down in *Kunkel* and *Best*. Specifically, plaintiff contends that the challenged provisions of the Act are analogous to the provisions invalidated in section 2—1003(a) in two respects. First, plaintiff contends, subsections (d) and (e) similarly violate Supreme Court Rule 201 because they contain no limitation on the scope of information that can be elicited *ex parte* from the patient's doctor during discovery, thereby allowing medical care entirely unrelated to the issue raised in a lawsuit to be fully revealed. Second, plaintiff contends that the provisions of subparagraph (d) and (e) are analogous to those invalidated in section 2—1003(a) because the circuit court is foreclosed from deciding discovery issues relating to *ex parte* contacts between defense counsel and hospital health-care providers who are not specifically named as defendants in plaintiff's medical malpractice action. In addition, plaintiff contends that subparagraphs (d) and (e) of section 6.17 of the Act "go[ ] further" than section 2—1003(a) because the Act provisions "permit the *ex parte* contact long before any

lawsuit is filed; in fact, irrespective of whether a lawsuit is filed."

Defendants maintain that plaintiff's argument, which echoes the ruling of the circuit court, is inapposite. Defendants contend that both plaintiff and the circuit court improperly ignore the important nonlitigation aspects of subsections (d) and (e) of section 6.17. In addition, defendants contend that both plaintiff and the circuit court improperly applied this court's rulings in *Kunkel* and *Best* to the matter at bar, because the challenged provisions of the Act are fundamentally distinguishable in character and scope from the provisions determined to violate the separation of powers in section 2—1003(a). We agree.

As stated, because all statutes carry a strong presumption of constitutionality, the party challenging a legislative enactment bears the burden of clearly establishing that the provision in issue is unconstitutional. *Arangold*, 183 Ill. 2d at 351; *Russell*, 183 Ill. 2d at 441. We conclude that plaintiff has failed to meet this burden with respect to her separation of powers argument. Plaintiff's position is based upon the mistaken premise that subparagraphs (d) and (e) of section 6.17 of the Act impermissibly infringe upon the judiciary's inherent authority to regulate discovery. Contrary to plaintiff's assertions, however, the provisions of the Act, including subparagraphs (d) and (e) of section 6.17, do not regulate "discovery." Instead, the Act provides standards and regulations intended to safeguard the public's health and welfare. We reject plaintiff's general assertions that subsections (d) and (e) of section 6.17 of the Act are analogous to section 2—1003(a), which consisted of provisions solely intended to regulate the discovery process during litigation. We therefore conclude that because plaintiff has failed to clearly establish that subparagraphs (d) and (e) violate the doctrine of separation of powers,

plaintiff has not overcome the statute's strong presumption of constitutionality.

The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). A court, therefore, first looks to the language of the statute, which is the most reliable indication of the objectives of the legislature in enacting a particular law. *County of Knox ex rel. Masterson v. Highlands, L.L.C.*, 188 Ill. 2d 546, 556 (1999). The language of the statute must be afforded its plain and ordinary meaning, and, where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction. *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999). In construing a statute, all of the provisions of an enactment are to be viewed as a whole. Words and phrases should not be construed in isolation, but are interpreted in light of other relevant provisions of the statute. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. Courts may presume that the General Assembly, in enacting the legislation, did not intend absurdity, inconvenience or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

Section 2—1003(a) was part of the Code of Civil Procedure and applied exclusively to the disclosure of a plaintiff's medical information during discovery conducted in conjunction with personal injury litigation. The provisions challenged in the matter at bar are not a part of the Code of Civil Procedure, but are contained within the Hospital Licensing Act (210 ILCS 85/1 *et seq.* (West 2000)). The stated purpose of the Act "is to provide for the better protection of the public health through the development, establishment, and enforcement of standards *** for the care of individuals in hospitals." 210 ILCS 85/2(a) (West 2000). Indeed, the General Assembly

has wide regulatory power with respect to the health-care professions (*Methodist Medical Center v. Ingram*, 82 Ill. 2d 511, 523 (1980), citing *Barsky v. Board of Regents of the University of the State of New York*, 347 U.S. 442, 98 L. Ed. 829, 74 S. Ct. 650 (1954); *Klein v. Department of Registration & Education*, 412 Ill. 75 (1952)), and it is within the broad discretion of the legislature "to determine not only what the public interest and welfare require, but to determine the measures needed to secure such interest" (*Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 364 (1985)).

The provisions of the Act, including subparagraphs (d) and (e) of section 6.17, apply to all licensed hospitals in the regular course of their daily operations. These provisions provide specific regulations and standards deemed by the General Assembly to be necessary in order to safeguard the public health. Significantly, the plain language of section 6.17 establishes that the communications allowed under subsections (d) and (e) are not triggered by litigation, but are intended to promote a limited, intrahospital exchange of information that, in the legislature's reasonable judgment, is beneficial to the general health and welfare of the public.

Pursuant to subsection (b) of section 6.17 of the Act, a provision which is *not* challenged by plaintiff in the instant cause, "[a]ll information regarding a hospital patient gathered by the hospital's medical staff and its agents and employees shall be the property and responsibility of the hospital." 210 ILCS 85/6.17(b) (West 2000). The information-gathering agents of the hospital, with respect to the hospital's patients, are its physicians, nurses and other caregivers. The hospital, as a corporate entity, is only aware of information about its patients as a result of the recordkeeping performed by its own health-care professionals. Therefore, it follows from subsection (b) that any information known by any

hospital caregiver with respect to a patient's care at that hospital is *hospital* information.

Defendants and *amici* Cook County and Illinois Hospital and Healthsystems Association contend that in order to safeguard and improve patient care, and to reduce morbidity and mortality, hospitals must constantly investigate the quality of patient care, especially when an unexpected adverse event occurs. A timely investigation may involve the sharing of the hospital's information with risk management personnel or counsel for the hospital. Indeed, defendants and *amici* contend, if a hospital fails to engage in ongoing quality review, it may jeopardize the accreditation of the hospital. Defendants and *amici* note that the Joint Commission on Accreditation and Healthcare Organizations mandates that hospitals must collect data to "monitor the stability of existing processes, identify opportunities for improvement, identify changes that will lead to improvement, and sustain improvement." *Joint Commission on Accreditation of Healthcare Organizations, Comprehensive Accreditation Manual for Hospitals: The Official Handbook* § 1, pt. PI.3, at PI-9 (1999 ed. updated August 2000). Further, occurrences involving death or physical or psychological injury, or the risk thereof, must be responded to, analyzed and followed up in a timely and thorough manner. *Joint Commission on Accreditation of Healthcare Organizations, Comprehensive Accreditation Manual for Hospitals: The Official Handbook* § 1, pt. PI.3, at SE-1 to SE-7 (1999 ed. updated February 2000).

In light of the highly regulated environment in which hospitals operate, we conclude that it is reasonable and logical that hospital risk managers and hospital counsel interact on a regular basis with hospital employees, agents and staff concerning a wide array of issues which may require prompt legal guidance and which are not related to litigation. As defendants and *amici* note, such is-

sues include the prompt investigation of adverse incidents, the assessment of resuscitation orders and the validity of patient consents, patient treatment issues, emergency room problems, consultation requests, specialist involvement, follow-up procedures, surgical and post-operative complications, staffing and equipment issues, and payment processing for treatment. In each of these instances, communication of a patient's medical information to legal counsel or risk management personnel may be necessary in order not only to adequately and appropriately respond to the occurrence, but also to prevent any similar adverse occurrence in the future.

In addition, hospitals must comply with a panoply of complex state and federal regulations and reporting requirements which may require regular consultation with legal counsel. See, *e.g.*, 42 C.F.R. § 482.21 (2001) (Medicare and Medicaid regulations require hospitals to engage in ongoing quality assurance reporting); 21 C.F.R. § 803.30 *et seq.* (2001) (failures of medical devices that result in death or serious injury to a hospital patient must be reported to the FDA); 77 Ill. Adm. Code § 250.990 (2001) (hospitals must file incident reports upon the occurrence of certain events); 410 ILCS 325/4 (West 2000) (sexually transmissible diseases must be reported to the Illinois Department of Health in accordance with 77 Ill. Adm. Code 693.30 (2001)); 745 ILCS 45/0.01 *et seq.* (West 2000) (the Illinois Department of Public Health must be notified if a hospital patient is afflicted with a communicable disease in accordance with 77 Ill. Adm. Code § 693.30 (2001)); 410 ILCS 310/4 (West 2000) (cases of AIDS must be reported to the Illinois Department of Public Health in accordance with 77 Ill. Adm. Code § 693.30 (2001)). The above examples illustrate that a hospital's risk managers and counsel have a legitimate and important interest in communicating with the hospital's medical staff, agents and employees—an interest which may be separate and apart from litigation.

In an effort to facilitate the goal of safeguarding and improving the quality of health care, the Illinois General Assembly unanimously enacted Public Act 91—526, in which it amended section 6.17 of the Act to allow limited, confidential intrahospital access to patient medical records and information, while also assuring that the confidentiality of such information is protected. Specifically, pursuant to subsection (d) of section 6.17, hospital medical staff members, agents and employees are prohibited from disclosing patient treatment information except in specifically enumerated circumstances relating to patient welfare and consent, hospital operations, including risk management or defense of claims brought against the hospital arising out of the care, or other public policy objectives authorized by law. 210 ILCS 85/ 6.17(d) (West 2000). The legislature also clarified in subsection (e) of section 6.17 that "[t]he hospital's medical staff members and the hospital's agents *** may communicate, at any time and in any fashion, with legal counsel for the hospital concerning the patient medical record privacy and retention requirements of [section 6.17] and any care or treatment they provided or assisted in providing to any patient," but only with respect to treatment and care provided "within the scope of their employment or affiliation with the hospital." 210 ILCS 85/6.17(e) (West 2000).

We conclude that the limited intrahospital exchange of information authorized by subsections (d) and (e) of section 6.17 of the Act, including the "risk management and defense of claims" discussions, are intracorporate conversations with respect to information which, statutorily, is the property and responsibility of the hospital. Accordingly, we disagree with plaintiff's characterization of the exchange of the hospital's own information among the hospital's own medical staff, agents, and employees as "discovery" with respect to the hospital. "Discovery"

is defined as "the disclosure of facts, deeds, documents, or other things in the exclusive knowledge or possession of one party, which are necessary to the party seeking discovery as part of a cause of action or defense in an action pending." 27 C.J.S. *Discovery* § 2(a) (1999). Thus, in order for "discovery" to occur, a legal action must be pending, and there must be a party to the action who seeks information from an opposing litigant or from a third party. We observe that the challenged provisions of the Act strictly confine the communications to the intra-hospital setting, and specifically prohibit disclosure of patient information to any individual who is not affiliated with the hospital or with respect to occurrences outside of the hospital. Because the limited intrahospital discussions contemplated under subsection (d) and (e) are not properly characterized as disclosures to an opposing litigant or to a third party not affiliated with the hospital, and do not necessarily take place in a litigation setting, the information shared is not "discovery" subject to supreme court rules. We conclude that the plain language of subsections (d) and (e) of section 6.17 of the Act do not purport to regulate discovery, and therefore do not impinge upon the power of the judiciary.

Plaintiff further asserts that because the challenged provisions of the Act "permit the *ex parte* contact long before any lawsuit is filed; in fact, irrespective of whether a lawsuit is filed," subsections (d) and (e) of section 6.17 "go[ ] further" than the provisions invalidated upon separation of powers grounds in section 2—1003(a). We find plaintiff's position untenable. Under plaintiff's view, no information with respect to a hospital patient could be shared with a hospital's risk managers or legal counsel prior to the patient retaining an attorney and filing a lawsuit. Such a rule would lead to absurd results. For example, plaintiff's position would preclude the obtaining of prompt legal advice with respect to questions

concerning the validity of patient consents or resuscitation orders, delays which could result in serious harm to the hospital's patients. In addition, if we were to accept plaintiff's view, a hospital would be required to formally depose its own medical staff, agents and employees prior to investigating an adverse incident occurring in the hospital, and for which the hospital may potentially be liable. Such a procedure would hamper the prompt investigation of the adverse event and the hospital's ability to respond to the event and prevent a similar reoccurrence. It is well settled that "[s]tatutes are to be construed in a manner that avoids absurd or unjust results." *Croissant v. Joliet Park District*, 141 Ill. 2d 449, 455 (1990); *Stewart v. Industrial Comm'n*, 115 Ill. 2d 337, 341 (1987). We conclude that plaintiff's argument conflicts with the intended purpose of subsections (d) and (e) of section 6.17, which is to promote prompt intrahospital communications in order to ensure quality patient care.

Furthermore, plaintiff's argument ignores the fact that the limited intrahospital communications allowed pursuant to subsections (d) and (e) of section 6.17 are necessitated not only by the federal and state regulations and reporting requirements, but also by the decisions of this court. We have previously recognized the independent duty of hospitals to review and supervise the medical care administered to a patient. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993); *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 332 (1965) (recognizing a hospital's duty to assume responsibility for the care of its patients). Accordingly, hospitals have a right and a duty, as "institutions holding themselves out as devoted to the care and saving of human life" (*Johnson v. St. Bernard Hospital*, 79 Ill. App. 3d 709, 716 (1979)), to engage in the communications prescribed by subparagraphs (d) and (e) in order to safeguard and improve medical care services.

Even if litigation ultimately ensues with respect to a patient's care at a hospital, we do not believe that the institution of a lawsuit by a plaintiff alters the fact that the hospital, through its risk management personnel or counsel, may communicate, within the limited parameters of subsections (d) and (e), with the patient's caregivers prior to the suit regarding information that is, pursuant to subsection (b) of section 6.17, the property and responsibility of the hospital. In addition, upon the filing of suit, the plain language of subsections (d) and (e) does not infringe upon the circuit court's inherent powers to manage the orderly discovery of information during litigation. The circuit court retains the full authority to enter protective orders, where appropriate, pursuant to Supreme Court Rule 201(c)(1), and to ensure compliance with discovery through discretionary sanctions, pursuant to Rule 219.

Plaintiff's attempt to equate subsections (d) and (e) of section 6.17 of the Act with invalidated section 2—1003(a) fails for several additional reasons. Unlike section 2—1003(a), which required the wholesale disclosure to all defendants of all medical records with respect to any care ever received by a personal injury plaintiff, section 6.17 allows only hospital employees, agents and medical staff to discuss with the hospital's attorneys and risk managers the treatment provided by the hospital's caregivers to a hospital patient at the hospital and "within the scope of their employment or affiliation with the hospital." The provisions in subsections (d) and (e) are strictly confined to the internal hospital setting and thus do not involve the type of wholesale, third-party disclosure which was found objectionable under section 2—1003(a). Moreover, the scope of disclosure authorized by the Act is limited. Unlike section 2—1003(a), subsections (d) and (e) do not afford every personal-injury defendant the unlimited opportunity to discover the plaintiff's entire medical history.

48

Further, in *Kunkel* and *Best*, we found it significant that section 2—1003(a) mandated the circuit court to either order a wholesale disclosure to all defendants of all medical records with respect to any care ever received by a personal injury plaintiff, or to dismiss the plaintiff's claim with prejudice for plaintiff's failure to comply. We observed that section 2—1003(a) appeared to be "designed to discourage tort victims from pursuing valid claims by subjecting them to the threat of harassment and embarrassment through unreasonable and oppressive disclosure requirements." *Kunkel*, 179 Ill. 2d at 532. In contrast, subsections (d) and (e) of section 6.17 contain no similar disincentive to a hospital patient who may be contemplating the filing of a claim. In addition, subsections (d) and (e), unlike section 2—1003(a), do not mandate action on the part of the circuit court and, therefore, are not a direct legislative regulation of court procedure.

Finally, we noted in *Best* that under section 2—1003(a), a plaintiff would lose his or her right of action as a penalty for not consenting to the blanket disclosure of all confidential medical information. *Best*, 179 Ill. 2d at 442. Conversely, a potential plaintiff would not be deprived of a right of action as a result of the provisions of subsections (d) and (e) of section 6.17 of the Act.

In sum, plaintiff's argument that the challenged provisions of section 6.17 of the Act are analogous to section 2—1003(a), which was invalidated in *Kunkel* and *Best*, is misplaced. Further, the constitutional prohibitions sought by plaintiff would interfere with legitimate, limited intrahospital communications of hospital information which are unrelated to litigation, but are essential to the provision of high quality health care. Under subparagraphs (d) and (e) of section 6.17 of the Act, the judiciary retains the full discretion afforded to it under

supreme court rules. As stated, "[l]egislative enactments enjoy a strong presumption of constitutionality, and the burden rests upon the challenger to demonstrate the invalidity of a particular statute." *Kunkel*, 179 Ill. 2d at 529. Plaintiff has failed to satisfy her burden of proof to clearly establish that subparagraphs (d) and (e) of section 6.17 constitute a violation of the separation of powers clause contained in article II, section 1, of the Illinois Constitution of 1970. Accordingly, we hold that section 6.17(d) and section 6.17(e) of the Act do not violate the constitutional provision of the separation of powers.

### B. Subsection (h)

We next turn to plaintiff's separation of powers challenge with respect to subsection (h) of section 6.17 of the Act, which provides that "[a]ny person who, in good faith, acts in accordance with the terms of [section 6.17] shall not be subject to any type of civil or criminal liability or discipline for unprofessional conduct for those actions." 210 ILCS 85/6.17(h) (West 2000). Plaintiff contends that subsection (h) violates the doctrine of separation of powers because "it emasculat[es] judicial authority over the activities of litigants and their counsel." Specifically, plaintiff asserts, the provisions of subparagraph (h) prevent the circuit court from prohibiting a lawyer's conduct by enforcing civil or criminal contempt orders, and preclude this court from instituting professional discipline proceedings against a lawyer. We reject plaintiff's contentions.

Plaintiff again attempts to analyze the statutory provision at issue solely in terms of its potential litigation impact. As we fully discussed above with respect to subparagraphs (d) and (e), the health-care regulations found in section 6.17 of the Act are not triggered by litigation and are intended to promote a limited, intrahospital exchange of information that, in the legislature's reasonable judgment, is beneficial to the general health and

welfare of the public. Subsection (h) of section 6.17 simply states the self-evident proposition that if a party acts in good faith and within the parameters of section 6.17, that party is not subject to liability or disciplinary action. Contrary to the assertions of plaintiff, subsection (h) of section 6.17 does not preclude the exercise of judicial authority in imposing sanctions for those who act in bad faith or violate any provision of the Act, and it creates no conflict with any disciplinary or professional regulation. Plaintiff has failed to satisfy her burden of clearly establishing that the provision in issue is unconstitutional, and plaintiff has therefore not rebutted the presumption of constitutionality. See *Arangold*, 187 Ill. 2d at 351; *Russell*, 183 Ill. 2d at 441. We conclude that the provisions of subsection (h) of section 6.17 facilitate the limited, permissible communications authorized in subsections (d) and (e), and do not violate the separation of powers.

## II. Privacy

We next address plaintiff's contention that subparagraphs (d) and (e) of section 6.17 of the Act violate a patient's right to privacy under the Illinois Constitution (Ill. Const. 1970, art. I, §§ 6, 12). In support of her constitutional challenge, plaintiff contends that subparagraphs (d) and (e) of section 6.17 "more deeply intrude" on a patient's privacy than section 2—1003(a), which was invalidated on privacy grounds in *Kunkel* and *Best*. Plaintiff argues that under the challenged provisions of the Act, "there is nothing [plaintiff], or any patient, could do to keep her doctors and nurses from talking to hospital counsel or risk management about any care they ever provided to her." Plaintiff concludes that, "for the same reasons" this court found section 2—1003(a) unconstitutional, we should also invalidate subparagraphs (d) and (e) of section 6.17 on privacy grounds. In addition, plaintiff argues that the challenged provisions of the Act

violate the holding of our appellate court in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986), that *ex parte* discussions between defense counsel and a plaintiff's treating physician shall be conducted only through authorized methods of discovery.

Defendants contend that plaintiff in her argument, and the circuit court in its ruling, again improperly ignore the important nonlitigation purposes of subsections (d) and (e) of section 6.17 of the Act. In addition, defendants maintain, the challenged provisions of the Act are distinguishable from section 2—1003(a) in scope and effect. Finally, defendants contend that although they do not contest the validity of the appellate court's holding in *Petrillo*, they nevertheless assert that subsections (d) and (e) are not violative of the principles which support the *Petrillo* holding. We agree.

Because plaintiff's constitutional challenge to subparagraphs (d) and (e) is again principally grounded on our analysis in *Kunkel* and *Best*, we examine the relevant portions of those decisions. In *Kunkel*, we noted that article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6) "goes beyond federal constitutional guarantees by expressly recognizing a zone of personal privacy." *Kunkel*, 179 Ill. 2d at 537. We further stated in *Best* that "the privacy interest referred to in the 'certain remedy' clause of section 12 [of article I of the Illinois Constitution of 1970] provides a constitutional source for the protection of the patient's privacy interest in medical information and records that are not related to the subject matter of the plaintiff's lawsuit." *Best*, 179 Ill. 2d at 458. This court emphasized that "[t]he confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy." *Kunkel*, 179 Ill. 2d at 537.

However, we specifically held in *Kunkel* and *Best* that

the right to privacy is not absolute. Only *unreasonable* invasions of privacy are constitutionally forbidden. *Kunkel*, 179 Ill. 2d at 538; *Best*, 179 Ill. 2d at 450. Applying this rule, we determined that section 2—1003(a) constituted a "substantial and unjustified" invasion of an individual's right to privacy in personal medical information because that provision allowed wholesale disclosure, to a host of third-parties, of confidential information unrelated to the subject matter of the plaintiff's lawsuit. *Kunkel*, 179 Ill. 2d at 539; see also *Best*, 179 Ill. 2d at 458-59.

As stated, it is the burden of the party challenging the validity of a statute to rebut the presumption of constitutionality. *Arangold*, 187 Ill. 2d at 351; *Russell*, 183 Ill. 2d at 441. We hold that plaintiff in the matter at bar has failed to clearly establish that the provisions contained within subsections (d) and (e) of section 6.17 of the Act unreasonably violate a hospital patient's right to privacy. The limited intrahospital communications allowed pursuant to subsections (d) and (e) in order to assure quality patient care do not unreasonably invade a hospital patient's expectation of privacy.

Significantly, in the modern hospital setting, healthcare services are provided to the patient not only by physicians, but by a wide array of hospital personnel. Individuals who may require information with respect to the patient's medical history, current condition, and treatment include direct caregivers such as nurses and attendants; specialists such as radiologists, anesthesiologists and surgeons; and administrative personnel such as individuals responsible for compiling medical records and preparing billing statements. Indeed, because "the reasonable expectations of the public have changed" with the advent of modern hospital care (*Petrovich v. Share Health Plan of Illinois, Inc.*, 188 Ill. 2d 17, 32 (1999)), hospital patients today often regard the institution of the

hospital itself, rather than the individual treating physician, as the patient's primary caregiver. *Gilbert*, 156 Ill. 2d at 525-26. In *Gilbert*, we noted that if an individual voluntarily enters a hospital without objecting to his or her admission, and without seeking care from a specific physician, that person " 'is seeking care from the hospital itself.' " *Gilbert*, 156 Ill. 2d at 525, quoting *Pamperin v. Trinity Memorial Hospital*, 144 Wis. 2d 188, 211-12, 423 N.W.2d 848, 857 (1988). We reasoned that this was especially true in the case where an individual seeks treatment from a hospital's emergency room, as plaintiff did in the matter at bar. We stated that " '[a]n individual who seeks care from the hospital itself, as opposed to care from his or her personal physician, accepts care from the hospital in reliance upon the fact that complete emergency room care—from blood testing to radiological readings to the endless medical support services—will be provided by the hospital through its staff.' " *Gilbert*, 156 Ill. 2d at 525-26, quoting *Pamperin*, 144 Wis. 2d at 211-12, 423 N.W.2d at 857.

In light of the reality of contemporary hospital operations, we conclude that a hospital patient could not reasonably expect a member of the hospital's medical staff, or the hospital's agents and employees, to refrain from discussing, within the narrow parameters set forth in subsections (d) and (e) of section 6.17 of the Act, the medical care provided to the patient with the hospital, which is ultimately responsible for the patient's care. Under these circumstances, it follows that a patient who enters such a highly regulated environment, necessarily involving a number of caregivers, would have a reduced expectation of privacy with respect to the communication of their hospital medical information within the hospital setting. The provisions of section 6.17 of the Act, however, protect a patient's justifiable expectation of privacy with respect to the release of medical informa-

tion to third parties, outside of those hospital personnel specifically enumerated in subsection (d). The Act explicitly prohibits disclosure of medical information to outsiders and makes it a misdemeanor for "[a]ny individual [to] wilfully or wantonly disclos[e] hospital or medical record information in violation of" the Act. 210 ILCS 85/6.17(i) (West 2000). The provisions of section 6.17 of the Act, therefore, afford hospital patients protection against disclosure of medical information to individuals beyond those identified in subsection (d).

Contrary to plaintiff's assertions that our decisions in *Kunkel* and *Best* mandate invalidation of subparagraphs (d) and (e) of section 6.17 of the Act on privacy grounds, we determine that the challenged provisions are distinguishable from section 2—1003(a) of the Code of Civil Procedure. As we have explained above, the provisions contained within section 2—1003(a) unreasonably invaded an individual's right to privacy because they authorized unlimited disclosure of a personal injury plaintiff's entire lifetime medical history to third parties who had no prior relationship with the plaintiff or the plaintiff's medical care. In sharp contrast, subparagraphs (d) and (e) of section 6.17 specifically provide *what* information may be discussed, *with whom* it may be discussed, and *how* those discussions are to be conducted. The communications authorized by the challenged provisions of the Act are strictly limited to the intrahospital setting, and the provisions explicitly prohibit disclosure of a patient's medical information to outside third parties. Further, the authorized communications are narrowly circumscribed to include only medical care and treatment rendered to the patient at the hospital, by the hospital's own medical staff, agents or employees. Finally, the authorized communications involve information which is already known to the hospital by virtue of the provisions contained within subsection (b) of section 6.17

of the Act (provisions not challenged by plaintiff at bar), which state that "[a]ll information regarding a hospital patient gathered by the hospital's medical staff and its agents and employees" is the property and the responsibility of the hospital. 210 ILCS 85/6.17(b) (West 2000). Accordingly, because subsections (d) and (e) of section 6.17 of the Act do not unreasonably invade a hospital patient's right to privacy, they are distinguishable from the provisions of section 2—1003(a) which were invalidated on privacy grounds in *Kunkel* and *Best*.

In addition to her constitutional challenge, plaintiff further contends that subsections (d) and (e) of section 6.17 of the Act violate the holding of our appellate court in *Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986). In *Petrillo*, the minor plaintiff filed a product liability action against Syntex Laboratories, Inc., the manufacturer of two infant formulas. The plaintiff alleged that he was injured as a result of his consumption of these formulas. During the discovery process, a defense attorney for Syntex informed the circuit court that he had engaged in *ex parte* conferences with the plaintiff's treating physician. The plaintiff's attorney thereafter moved the trial court to bar defense counsel for Syntex from engaging in any future *ex parte* conferences with any of the plaintiff's treating physicians. The circuit court granted the motion, finding that public policy barred such conferences. Nevertheless, Syntex's defense counsel continued to engage in *ex parte* conferences with the plaintiff's treating physicians and was held in direct contempt of court. On appeal, the appellate court affirmed the judgment of the circuit court.

The *Petrillo* court held that "*ex parte* conferences between defense counsel and a plaintiff's treating physician jeopardize the sanctity of the physician-patient relationship and, therefore, are prohibited as against public policy." *Petrillo*, 148 Ill. App. 3d at 588. The *Petrillo* court

explained that "the confidential relationship existing between a patient and physician demands that information confidential in nature remain, absent patient consent, undisclosed to third parties." *Petrillo*, 148 Ill. App. 3d at 591. The *Petrillo* court observed that by engaging in *ex parte* conferences with defense counsel without the patient's consent, "the physician divulges to a third party information which the patient originally disclosed to the physician with the belief that the information would remain confidential unless the patient gave his consent otherwise." *Petrillo*, 148 Ill. App. 3d at 591. The *Petrillo* court concluded, therefore, that defense counsel was to communicate with a plaintiff's treating physician only through court-approved discovery methods.

Plaintiff acknowledges that the appellate court subsequently recognized an exception to the *Petrillo* holding, allowing a hospital's attorneys to communicate *ex parte* with health-care employees who are specifically alleged to be negligent and whose negligence a plaintiff seeks to impute to the hospital. In *Morgan v. County of Cook*, 252 Ill. App. 3d 947, 952 (1993), the court held that if a plaintiff attempts to hold a hospital liable for the conduct of a hospital's own treating caregivers, "the defendant hospital is included within the physician-patient privilege and the patient has impliedly consented to the release of his medical information to the defendant hospital's attorneys." *Morgan*, 252 Ill. App. 3d at 954. The court reasoned that the " 'exclusion of the hospital from the physician-patient privilege would *** effectively prevent the hospital from defending itself by barring communication with the physician for whose conduct the hospital is allegedly liable.' " *Morgan*, 252 Ill. App. 3d at 953, quoting *Ritter v. Rush-Presbyterian-St. Luke's Medical Center*, 177 Ill. App. 3d 313, 317-18 (1988). According to plaintiff, however, the principles underlying *Petrillo* prevent *ex parte* communications be-

tween a hospital's defense counsel and plaintiff's hospital caregivers who have not yet been specifically named by plaintiff in her complaint, but for whose conduct the hospital could be potentially liable. We disagree with plaintiff's interpretation of the *Petrillo* decision as it applies to the specific facts presented at bar.

We continue to adhere to the belief that "the rationale of the *Petrillo* court is sound." *Best*, 179 Ill. 2d at 458. Significantly, the *Petrillo* holding is animated by the important public policy concern of protecting a patient's privacy by preventing confidential medical information from being divulged to parties who otherwise would not be privy to this sensitive information. Indeed, the *Petrillo* court repeatedly focused upon the fact that the plaintiff possessed an expectation that his medical information would be protected from disclosure to a "third party." For example, the *Petrillo* court explained that the physician-patient relationship remains confidential only as long as a patient must first provide consent before any information "is released to third parties," and that "at the very minimum, the confidential relationship existing between a patient and physician demands that information confidential in nature remain, absent patient consent, undisclosed to third parties." *Petrillo*, 148 Ill. App. 3d at 590.

Unlike *Petrillo*, however, where confidential information was divulged during discovery to parties who otherwise would not possess the information absent the disclosure, in the matter at bar, the challenged provisions of the Act authorize limited intrahospital communication of information that is already the property of the hospital and is already known to the hospital's agents, including hospital counsel, irrespective of the filing of a lawsuit. The hospital is not a third party with respect to its own medical information, which is compiled by the hospital's own caregivers.

Furthermore, if and when a patient institutes a legal action against a hospital, the patient cannot validly claim any greater expectation of privacy after the lawsuit is filed than prior to its filing. Indeed, under *Petrillo*, the filing of a lawsuit diminishes, rather than increases, a patient's expectations of privacy in information related to the mental or physical condition which the plaintiff has placed at issue in the legal action. *Petrillo*, 148 Ill. App. 3d at 591. We find it significant that the act of instituting a lawsuit against a hospital does not alter the fact that, pursuant to subsection (b) of section 6.17 of the Act, the hospital may communicate with the plaintiff's caregivers about the plaintiff's care before the commencement of the legal action. Accordingly, if the hospital may access this patient information before litigation ensues because it is hospital information, it remains hospital information after the initiation of litigation. The filing of a lawsuit affects neither the nature of this information nor the hospital's right or ability to access its own information about the care and treatment rendered to the patient at the hospital by its own caregivers.

Indeed, accepting plaintiff's interpretation of *Petrillo*, under the facts presented at bar, would lead to absurd results. For example, if *Petrillo* prevented the limited intrahospital communications authorized by subsections (d) and (e) of section 6.17 of the Act, hospitals would face the dilemma of having to choose between ceasing to communicate with all hospital caregivers with respect to a hospital patient's treatment, communicating only with those caregivers the hospital assumes were not negligent and risk a subsequent *Petrillo* violation if the hospital's assumption was incorrect, or deposing all of the patient's hospital caregivers. Further, if we were to accept plaintiff's view, hospitals, which are statutorily obligated to create, maintain and protect private medical records, would be forced to subpoena their own records in the

event of litigation. As stated, we must interpret statutes in a manner that avoids absurd results. *Croissant*, 141 Ill. 2d at 455.

Finally, we observe that the provisions contained in subsections (d) and (e) of section 6.17 of the Act *allow*, rather than mandate, the specified intrahospital communications. Specifically, subsection (d) provides that the patient's information "may be disclosed," pursuant to the enumerated circumstances, by the hospital's medical staff, agents and employees, Similarly, subsection (e) provides that the hospital's medical staff, agents and employees "may communicate" with hospital counsel. We note that a physician always remains bound by his or her Hippocratic Oath, as well as the modern principles of medical ethics derived from it, to use discretion and judgment in deciding what information should be disclosed and under what circumstances. See *Kunkel*, 179 Ill. 2d at 537; *Best*, 179 Ill. 2d at 456 & n.12.

We conclude that, in enacting subparagraphs (d) and (e) of section 6.17 of the Act, the General Assembly reasonably balanced a hospital patient's interest in privacy against the strong public interest in allowing limited intrahospital communications of patient information. As fully explained earlier in this opinion, the communications authorized pursuant to subparagraphs (d) and (e) of section 6.17 are an important tool in not only assisting the hospital's compliance with a multitude of government regulations and reporting requirements, but also in promoting the compelling societal interest in assuring quality health care. We observed that, as part of a hospital's daily operations, and apart from any litigation concerns, legal consultations may be necessary between the hospital's counsel and the hospital's medical staff, agents and employees, during which certain patient information may be discussed. Our decision today is consistent with the principles underlying *Kunkel*, *Best* and

*Petrillo*. We strongly adhere to the principle, stated in those decisions, that unreasonable invasions of an individual's privacy are constitutionally forbidden. *Kunkel*, 179 Ill. 2d at 538; *Best*, 179 Ill. 2d at 450. Plaintiff has failed to satisfy her burden to clearly establish that the challenged provisions of the Act unreasonably violate a hospital patient's privacy. Accordingly, we conclude that subparagraphs (d) and (e) of section 6.17 of the Act do not authorize the kind of "substantial and unjustified" invasion of privacy that is prohibited by the Illinois Constitution. See *Kunkel*, 179 Ill. 2d at 539.

### III. Special Legislation

In her brief to this court, plaintiff raises an argument, consisting of one paragraph, that subsection (e) of section 6.17 of the Act violates the prohibition against special legislation set forth in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). Plaintiff generally contends that subsection (e) should be invalidated because "[c]ounsel for hospital defendants receive a distinct litigation advantage over non-hospital defendants by this legislation." Plaintiff also generally contends that subsection (e) "favors plaintiffs of every kind of injury cases compared with plaintiffs who sue hospitals *** in the matter of doctor-patient privileges."

Because subsection (e) of section 6.17 neither affects a fundamental right nor involves a suspect classification, the appropriate standard for our review of plaintiff's special legislation challenge is the rational basis test. *Best*, 179 Ill. 2d at 393. Under the rational basis standard, judicial review of a legislative classification is limited and generally deferential. *Miller*, 196 Ill. 2d at 59. In employing a rational basis analysis, a court must determine whether the challenged statutory classification is rationally related to a legitimate state interest. *Best*, 179 Ill. 2d at 393. "A legislative classification must

be upheld if any set of facts can reasonably be conceived which justify distinguishing the class to which the statute applies from the class to which the law is inapplicable." *Miller*, 196 Ill. 2d at 59.

The circuit court determined that the challenged provision of the Act satisfied the rational basis test and, therefore, did not constitute impermissible special legislation. The circuit court held that "[d]ue to the unique nature of hospital defendants," they are "distinguishable from other classes of defendants." Specifically, the circuit court held that "[a] hospital's involvement in a medical malpractice lawsuit is notably different from that of other tort defendants." In addition, the circuit court concluded that "Public Act 91—526 rationally relates to the legislative purpose sought to be accomplished in the revisions of the Hospital Licensing Act." We agree.

As we have explained above, the limited intrahospital communications authorized under the Act are necessary to assist a hospital in complying with federal and state regulations and reporting requirements and in maintaining and improving patient care. Nonhospital defendants neither face these government requirements nor have these same public policy interests. In addition, as also previously explained, unlike other defendants, hospitals may be held liable for the actions of their health-care providers. See *Gilbert*, 156 Ill. 2d at 524-25. Further, unlike other types of defendants, the hospital and its agents and employees are statutorily bound to respect the confidentiality of patient information. Accordingly, we agree with the circuit court and find that the classification is reasonably related to a legitimate governmental purpose and does not constitute special legislation.

As a final matter, we note that the Illinois State Bar Association has filed an *amicus* brief in this matter which proffers, as its sole argument, the contention that the provisions of Public Act 91—526 violate the single subject

rule contained in article IV, section 8(d), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 8(d)). *Amicus* states in its brief that "it seeks to bring to the attention of this court additional argument which may be of interest to the court, but which is unlikely to be raised by either party." This court has repeatedly rejected attempts by *amicus* to raise issues not raised by the parties to the appeal. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 30 (1992); *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 117 (1990). It is well settled that "[a]n *amicus curiae* is not a party to the action but is, instead, a 'friend' of the court. As such, the sole function of an *amicus* is to advise or to make suggestions to the court." *People v. P.H.*, 145 Ill. 2d 209, 234 (1991); see also *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 59 (1987). Indeed, "[a]n *amicus* takes the case as he finds it, with the issues framed by the parties." *People v. P.H.*, 145 Ill. 2d 209, 234 (1991). Accordingly, because the issue of the single subject rule was not raised by the parties to this action, we decline to address it.

## CONCLUSION

For the foregoing reasons, we hold that subsections (d), (e) and (h) of section 6.17 of the Hospital Licensing Act (210 ILCS 85/6.17(d), (e), (h) (West 2000)) do not violate the separation of powers clause set forth in article II, section 1 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1). We also hold that subsections (d) and (e) of section 6.17 do not violate a patient's right to privacy derived from article I, sections 6 and 12, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§ 6, 12). Finally, we agree with the circuit court and hold that subsection (e) of section 6.17 does not violate the special legislation clause contained in article IV, section 13, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, § 13). Accordingly, the judgment of the circuit court is re-

versed in part and affirmed in part. We remand this cause to the circuit court for further proceedings.

*Circuit court judgment reversed in part and affirmed in part; cause remanded.*

CHIEF JUSTICE HARRISON, dissenting:

*Petrillo v. Syntex Laboratories, Inc.*, 148 Ill. App. 3d 581 (1986), prohibits defendants and their attorneys from engaging in *ex parte* discussions with an injured plaintiff's treating physicians. That prohibition is rooted in the right to privacy guaranteed by sections 6 and 12 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §§ 6, 12). *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 450-59 (1997). Because it is constitutionally based, the prohibition is not subject to limitation or revision by the General Assembly. The General Assembly has no power to enact legislation which is contrary to the provisions of our constitution. *Tully v. Edgar*, 171 Ill. 2d 297, 308 (1996); *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 539 (1990) (Ryan, J., specially concurring).

When the General Assembly last attempted to abrogate the *Petrillo* doctrine through legislative enactment, our court correctly found the legislation to be unconstitutional and void. *Best*, 179 Ill. 2d 367; *Kunkel v. Walton*, 179 Ill. 2d 519 (1997). Contrary to the majority, I would reach the same conclusion with respect to subparagraphs (d) and (e) of section 6.17 of the Hospital Licensing Act (210 ILCS 85/6.17 (West 2000)). In my view, those provisions trench on constitutionally protected privacy rights no less than section 2—1003(a) of the Code of Civil Procedure (735 ILCS 5/2—1003(a) (West 1994)), as amended by the Civil Justice Reform Amendments of 1995, the statute we declared void and unenforceable in *Best* and *Kunkel*.

The majority attempts to differentiate subparagraphs

(d) and (e) of section 6.17 from the now invalidated section 2—1003(a) of the Code of Civil Procedure by arguing that subparagraphs (d) and (e) of section 6.17 authorize far more limited disclosure of a patient's medical information than did section 2—1003(a). In the context of disclosure to counsel defending personal injury claims, however, there is no meaningful distinction between the statutes. As with section 2—1003(a), subparagraphs (d) and (e) confer on defense counsel unrestricted access to all aspects of a patient's medical history, regardless of its relevance.

When it drafted section 6.17, the legislature apparently hoped to avoid section 2—1003(a)'s constitutional infirmities by redefining ownership rights in a patient's records to make them the property of the hospital. The idea, apparently, was that if the medical records are deemed to belong to the hospital rather than the patient, disclosure of those records to the hospital's lawyers would amount to nothing more than the hospital sharing its own information with its own people. By definition, no improper disclosures to third parties would occur.

Although the majority has embraced this rationalization, it suffers from two fundamental flaws. First, it fails to recognize that a patient's constitutionally protected privacy interest in his or her own medical records (see *Best*, 179 Ill. 2d at 458-59) exists regardless of who is deemed to own the physical documents in which the patient's confidential medical information is recorded. Who owns the actual physical documents is unimportant. What matters is who has ultimate control over the medical information contained in those documents. Under our state constitution, that person is the patient. Accordingly, the legislature cannot sidestep the limitations imposed by *Petrillo* by decreeing that the records are the property of the hospital.

The second flaw in the majority's approach is that it

appears to assume that hospitals occupy the same position with respect to patients as do the patients' physicians. They do not. While hospitals may employ physicians and possess an independent duty to insure that those physicians provide patients with appropriate medical care (*Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill. 2d 1, 19 (1997)), hospitals do not themselves diagnose ailments or prescribe treatments. They cannot. They are corporate entities. The care is given by individual physicians, and the hospitals maintain records as a necessary service to those physicians and their patients. With respect to the physician-patient relationship, hospitals are not the doctor's alter ego. They are a third party.

There is no question that defense counsel employed by other third parties cannot obtain medical records from a patient's treating physician unless they utilize the discovery process authorized by Supreme Court Rule 201. *Petrillo*, 148 Ill. App. 3d at 591. That being so, it would be anomalous to hold that the discovery process authorized by Supreme Court Rule 201 is not similarly required to obtain access to the medical records generated by a physician who provided care at a hospital simply because the lawyers seeking access are employed by the hospital. That, however, is precisely what the majority's disposition permits. In the context of care provided in a hospital setting, the *Petrillo* doctrine has been abandoned.

In view of that result, I find it perplexing that my colleagues purport to embrace the principles underlying *Kunkel*, *Best* and *Petrillo*. See 198 Ill. 2d at 59-60. If they truly believed in those principles, as I do, the disposition of this case would have been straightforward. The court would have affirmed that portion of the circuit court's judgment invalidating the challenged sections of the Hospital Licensing Act and barring any *ex parte* com-

munication between hospital defense counsel or risk managers and any health-care providers for whose conduct the plaintiff was not seeking to hold the hospital vicariously liable.

The majority is also wrong to reject plaintiff's contention that subsection (e) of section 6.17 violates our state's constitutional prohibition against special legislation. My colleagues assess the validity of the law under a rational basis test on the grounds that "subsection (e) of section 6.17 neither affects a fundamental right nor involves a suspect classification." 198 Ill. 2d at 60. The problem with the majority's view is that its premise is incorrect. The law does affect a fundamental right.

One's physical health and medical condition are among the most intimate and personal aspects of one's life. Our court has specifically held that the right to privacy regarding such matters is a fundamental right. *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 35 (1996); *People ex rel. Tucker v. Kotsos*, 68 Ill. 2d 88, 97 (1977). That fundamental right to privacy necessarily embraces the right to privacy in one's medical records, which this court has previously recognized. Indeed, as we held in *Kunkel*, 179 Ill. 2d at 537, "[t]he confidentiality of personal medical information is, without question, at the core of what society regards as a fundamental component of individual privacy."

Subsection (e) of section 6.17 directly affects a patient's fundamental right of privacy in his personal medical information by authorizing when, by whom and to whom such information can be disclosed by a hospital's medical staff, agents and employees. Because the statute does affect a fundamental right, it must be subjected to strict scrutiny. *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 368 (1986); *Kotsos*, 68 Ill. 2d at 97. Statutes affecting fundamental rights and subject to strict scrutiny are presumptively invalid. *Village of Oak Lawn v. Mar-*

*cowitz*, 86 Ill. 2d 406, 416 (1981). For a statute to survive strict scrutiny, it must advance a compelling state interest and be narrowly tailored to serve that compelling interest. *Lulay v. Lulay*, 193 Ill. 2d 455, 470 (2000).

To the extent that subsection (e) of section 6.17 permits unrestricted disclosure of a patient's confidential medical information to a hospital's lawyers, the statute does not meet this exacting standard. Such unrestricted access is not necessary to enable the hospital to meet statutory reporting obligations and is not necessary to assure quality health care. Defense lawyers are not physicians, after all. They do not provide medical treatment, they do not help prepare or present morbidity and mortality reports, and it is not their function to establish health-care standards.

With respect to the hospital's lawyers, the primary purpose of subsection (e) of section 6.17 is to assist them in representing the institution against possible malpractice claims. While that is an entirely legitimate objective, the needs of a hospital's lawyers in investigating personal injury claims are no different and no more compelling than those of other defense counsel, who are required by the *Petrillo* doctrine to conduct their discovery in accordance with the formal proceedings set forth in our rules of court. Accordingly, there is no basis for affording them special treatment. The exemption from *Petrillo* created by subsection (e) for a hospital's lawyers must therefore fall.

For the foregoing reasons, I dissent.

JUSTICES FITZGERALD and KILBRIDE join in this dissent.